[No. 50328–1. En Banc. November 14, 1985.]

*In the Matter of the Dependency of*
PENELOPE B.

PENELOPE B., ET AL, *Petitioners*, v. R. B.,
ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General, Nancy F. Sloane, Michael E. Grant,* and *Lee Ann Miller, Assistants,* and *Frank Hoover,* for petitioners.

*Richard L. Cease, Public Defender,* and *Douglas A. Boe, Assistant,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

This case deals with allegations of child sexual abuse in the home and with evidentiary rules which apply in dependency proceedings where the child does not or cannot testify.

We granted discretionary review of an order of the Superior Court, Juvenile Division, which dismissed the dependency petition filed in this case by a caseworker for the Washington State Department of Social and Health Services. The dismissal was granted on motion of the parents (R. B. and M. B., respondents herein) after a full fact–finding hearing on the merits of the petition.

The dependency petition alleged that Penelope B., age 6 at the time the petition was filed, was a dependent child in accordance with RCW 13.34.030(2), in that she was abused or neglected as defined in RCW 26.44. The petition also alleged that the child's parents were not willing and capable of adequately caring for her with the result that she was in circumstances which constituted a danger of substantial damage to her psychological or physical development. By way of specific facts, the petition alleged:

The child has been or believes she has been sexually abused by her father because her father has asked her to perform oral sex with him.

The child states he has told her not to tell anyone. The child says she is fearful.

These acts have occurred in the family home and the mother has failed to protect her.

An extensive hearing was held where the parties were represented by counsel and the child by her guardian ad litem. Witnesses testified for the Department, the parents and the guardian ad litem. A total of 15 witnesses, including the parents, testified. In lieu of findings of fact and

conclusions of law, the trial court prepared and filed a written memorandum decision. Therein it conscientiously and comprehensively reviewed the evidence, stated the facts it found, and set forth its conclusions of law, reasoning and decision.

In commencing its review and analysis of the evidence, the trial court wrote:

> The State's case for dependency against the natural parents, Mr. and Mrs. [B.], is based on alleged sexual contact between the little girl, Penelope, and her father and is revealed, if at all, by statements of the girl herself, made to third parties, case workers, therapists, foster mother and upon examinations made by one physician–psychiatrist, Dr. Larry Freeman. The statements were objected to as hearsay by the respondents, but the testimony was admitted by the court subject to possible corroboration with the intended reservation of the court to strike the hearsay statements if not corroborated.

> While both sides in places objected to evidence on the grounds that the same was hearsay and that issue was contested with great vigor in court, neither side prepared or presented to the court a brief of authorities to support its position. With the [sic] reservation in mind, the court makes the following recount evaluation of portions of the testimony presented and offered:

The trial court in its memorandum decision also observed that "the State's case is based entirely upon hearsay evidence of statements made by a five year old child." It concluded:

> This case is of great concern to the court. The petition and charges contained therein are serious not only to the future of the child but also to the future of respondents and their entire family. In this respect the court notes the wording of RCW 13.34.020, which reads as follows:
> "The Legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the Legislature declares that the family unit should remain intact in the absence of compelling evidence to the contrary."

Here the State's case is based entirely upon hearsay evidence of statements made by a five year old child. The State has chosen to make the child unavailable by declaring that the child is not competent to be a witness. Assuming that this unilateral determination makes her unavailable as a witness under the rules of evidence and RCW 9A.44.120, this court feels that in the absence of corroboration such testimony does not possess the necessary indicia of reliability to permit it to be binding upon the court and the parties to this action.

It is the finding of the court that the hearsay testimony of the child, Penelope, must be stricken from the proof in this case, that the State has failed to carry its burden of proof by a preponderance of the evidence . . .

The facts will be gone into further in connection with our discussion of the issues.

## THE PROBLEM IN GENERAL

The problem facing society and the courts in this whole area has been well articulated by one commentator as follows:

The incidence of sexual abuse of young children has increased dramatically in recent years. The crimes committed are predominantly nonviolent in nature and most always occur in secrecy, with the child usually being the only witness. No particular age group is immune to sexual abuse, nor are the offenders confined to any particular class of persons. Indeed, more often than not, the offender is a parent, relative, or an acquaintance of the child.

Detecting sex abuse, as well as convicting its perpetrators, is exceptionally difficult, due to the lack of witnesses and corroborative physical evidence, and to the reluctance or inability of the victim to testify against the defendant. Even when the child does appear in court and testifies, he or she is often met with skepticism and disbelief. Consequently, to establish the guilt of the defendant, many prosecutors have tried to introduce the out–of–court statements of the victim into evidence through the testimony of witnesses who heard the statements. Since the hearsay rule generally prohibits the introduction of these statements, an exception to the rule is often

sought. Courts have used a variety of approaches in determining whether an exception should apply.[1]

(Footnotes omitted.) And further:

Physical corroboration is rare, for the crimes committed are predominantly nonviolent in nature. Most crimes consist of petting, exhibitionism, fondling, and oral copulation, activities that do not involve forceful physical contact. The lack of physical corroboration can also be attributed to the fact that most children, for a variety of reasons, do not resist their attackers and succumb easily.

In addition, witnesses other than the victim and perpetrator are rare; people simply do not molest children in front of others. Most often, the offender is a relative or close acquaintance of the child who is likely to have many opportunities to be alone with the child.[2]

(Footnotes omitted.)

Although the foregoing was written from the standpoint of criminal sanctions against the offender, and in a dependency case such as this one the focus is on protection of the child,[3] the social and evidentiary problems faced are much the same. As will be discussed, the judicial response to this problem is found in the Rules of Evidence, which are a codification of this state's evidentiary rules. We adopted these rules in 1980 following extensive study by the State Bar Association's Evidence Task Force and the State Judicial Council.[4] The rules apply to juvenile court fact-finding hearings.[5] The legislative response has been more recent and more specific; a number of pertinent statutes designed to help come to grips with this serious problem were

---

[1]Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum. L. Rev. 1745–46 (1983).

[2]83 Colum. L. Rev. at 1749–50.

[3]*In re Henderson*, 29 Wn. App. 748, 750, 630 P.2d 944 (1981); *In re Fisher*, 31 Wn. App. 550, 552, 643 P.2d 887 (1982); RCW 13.34.190(2).

[4]*See* Orland & Tegland, *The Federal Rules of Evidence: Washington Follows the Federal Model*, 15 Gonz. L. Rev. 277 (1979–1980).

[5]JuCR 3.7(b).

enacted after the trial and appeal of this case.[6]

Four principal issues are here presented.

## ISSUES

ISSUE ONE. Did the trial court err when it ruled that the Department's case was based entirely on hearsay evidence of statements made by the child, applied the corroboration requirements of RCW 9A.44.120 and then struck such evidence as hearsay?

ISSUE TWO. Was all of the testimony by Department personnel and therapists as to what the child did or said inadmissible hearsay?

ISSUE THREE. Did the testimony of the child psychiatrist as to what the child told him, in the two sessions the psychiatrist had with the child, constitute inadmissible hearsay?

ISSUE FOUR. Was the testimony of the Department's caseworker and others as to what the child had told them in response to their questions, and what the child was overheard to say to another youngster, admissible in evidence?

## DECISION

ISSUE ONE.

CONCLUSION. Much of the evidence concerning what the child said or did was not hearsay; and other such evidence, although hearsay, was admissible under well recognized exceptions to the hearsay rule. Thus, the trial court erred in striking all such evidence. Furthermore, RCW 9A.44.120, in the form in which it existed at all pertinent times herein, applied to criminal cases only and was not applicable in this dependency fact–finding hearing. It is, therefore, nec-

---

[6]*See* Laws of 1985, ch. 135, §§ 1, 2, p. 281 (child abuse—restraining orders or injunctions); Laws of 1985, ch. 183, §§ 1–6, p. 680 (parents and children to be advised of rights in dependency proceedings); Laws of 1985, ch. 259, §§ 1–4, p. 887 (child abuse reporting); Laws of 1985, ch. 344, §§ 1, 2, p. 1179 (child abuse prevention programs); Laws of 1985, ch. 404, § 1, p. 1754 (children's statements regarding sexual contact in dependency proceedings); Laws of 1985, ch. 419, §§ 1–7, p. 1841 (training in child abuse issues in public and private school curriculum).

essary to remand the case to the trial court for reconsideration in light of our decision herein, and for the entry of new or additional findings, conclusions or decision if indicated.

As appears in the above excerpts from the trial court's memorandum decision, it considered: (a) that the Department's entire case was based on hearsay evidence of the child's statements; (b) that RCW 9A.44.120, with its explicit corroboration requirements, was applicable to all the hearsay; and then (c) struck from the case all hearsay evidence concerning the child's statements made to others. For the reasons which follow, this was error.

 As the trier of fact, the trial court is the sole judge of the credibility of the witnesses and the weight which is to be given to their testimony. The trial court could not, however, strike and refuse to consider evidence properly before it. That was error.[7]

Furthermore, the trial court appears to have applied RCW 9A.44.120 to this case. At the time of trial, this statute provided in part as follows:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence *in criminal proceedings* in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:

(a) Testifies at the proceedings; or

(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

A statement may not be admitted under this section

---

[7]*Detonics ".45" Assocs. v. Bank of Cal.,* 30 Wn. App. 179, 180–81, 633 P.2d 114 (1981), *rev'd on other grounds,* 97 Wn.2d 351, 644 P.2d 1170 (1982); *Kenna v. Griffin,* 4 Wn. App. 363, 365, 481 P.2d 450 (1971). *See also Provins v. Bevis,* 70 Wn.2d 131, 137, 422 P.2d 505 (1967).

unless the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.

(Italics ours.) Laws of 1982, ch. 129, § 2, p. 559 (former RCW 9A.44.120). Essentially this statute is intended to create an additional exception to the hearsay rule, one not included in the court adopted Rules of Evidence.[8]

Thus, at the time of the hearing the statute by its terms applied only "in criminal proceedings"[9] and, since this is a dependency proceeding,[10] the statute does not apply. Nor do the confrontation clauses of the federal and state constitutions apply to this case, either, since by their terms they also apply only in criminal cases.[11] Furthermore, the statute by its terms also does not apply in those situations hereinafter discussed where evidence is "otherwise admissible" by court rule.[12]

In the trial court, all parties including the guardian ad litem were permitted to fully present their cases and introduce testimony. Numerous witnesses testified, arguments were presented, the parties rested their respective cases and the court rendered its memorandum decision and ruling. Under these circumstances, and since this matter was tried to the court, rather than reverse and remand for a new trial we deem it more appropriate to remand to the trial court for reconsideration in light of our decision herein and for

---

[8]*See State v. Ryan,* 103 Wn.2d 165, 178, 691 P.2d 197 (1984).

[9]RCW 9A.44.120 was amended to apply to *dependency* proceedings effective July 28, 1985. Thus the amendment did not become effective until after both the trial and the hearing in this case in this court and is not applicable here.

[10]*See In re Aschauer,* 93 Wn.2d 689, 695, 611 P.2d 1245 (1980); *In re Moseley,* 34 Wn. App. 179, 184–85, 660 P.2d 315 (1983).

[11]U.S. Const. amend. 6; Const. art. 1, § 22 (amend. 10). *See State v. Ryan, supra.*

[12]Laws of 1982, ch. 129, § 2 (former RCW 9A.44.120).

the entry of any new or additional findings of fact, conclusions of law or decision that may be indicated in light thereof.[13] We are also mindful that later dependency petitions are not barred if subsequent events should justify it.

ISSUE TWO.

CONCLUSION. The testimony of Department personnel and therapists as to their observations of the child's nonassertive conduct and demeanor during play therapy was not hearsay, nor were the child's nonassertive utterances hearsay. Accordingly, that testimony was not barred by the hearsay rule.

"Hearsay is not admissible except as provided by [Washington's Rules of Evidence], by other court rules, or by statute."[14]

The reasons for the hearsay rule have been explained by the United States Supreme Court:

> The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.[15]

In this state the admissibility of hearsay evidence is governed by six evidence rules, ER 801–806. ER 801 defines the fundamental terms and provides that certain assertions (statements) formerly thought of as exceptions to the hearsay rule are not hearsay at all. Insofar as here pertinent, the

---

[13]*See* RAP 12.2; *Harrison v. Consolidated Holding Co.*, 200 Wash. 434, 441–42, 93 P.2d 729 (1939).

[14]ER 802.

[15]*Chambers v. Mississippi*, 410 U.S. 284, 298, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973).

rule provides:

> The following definitions apply under this article:
>
> **(a) Statement.** A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.
>
> **(b) Declarant.** A "declarant" is a person who makes a statement.
>
> **(c) Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

ER 801 (part). This is identical to the comparable federal rule, Fed. R. Evid. 801(a)–(c).[16]

Thus, by definition, an utterance, writing or nonverbal conduct that is not assertive is not hearsay. The test is whether it was intended as an assertion or not.[17]

■ Many out-of-court *utterances* fall within such categories as greetings, pleasantries, expressions of joy, annoyance or other emotions when they are not intentional expressions of fact or opinion; hence, they are not assertions for purposes of the hearsay rule.[18]

*Nonverbal conduct* that is not intentionally being used as a substitute for words to express a fact or opinion is not hearsay. An involuntary act such as trembling would be admissible as nonassertive nonverbal conduct whereas the act of nodding one's head affirmatively or pointing to identify a suspect in a lineup would be hearsay and not admissible because it is assertive nonverbal conduct.[19]

The admissibility of nonassertive verbal or nonverbal conduct as circumstantial evidence of a fact in issue is gov-

---

[16]5A K. Tegland, Wash. Prac. § 329, at 108 (2d ed. 1982).

[17]K. Tegland § 331.

[18]*See United States v. Monaco,* 700 F.2d 577, 582 (10th Cir. 1983); *United States v. Zenni,* 492 F. Supp. 464 (E.D. Ky. 1980); *Crawford v. Garnier,* 719 F.2d 1317 (7th Cir. 1983).

[19]*Cole v. United States,* 327 F.2d 360, 361 (9th Cir. 1964); *State v. McCaughey,* 14 Wn. App. 326, 328, 541 P.2d 998 (1975); K. Tegland § 331, at 111.

erned by principles of relevance, not by hearsay principles. An assertion that is circumstantial evidence proves a fact indirectly, by implication; credibility of the declarant is not important because the relevance of the assertion does not depend on its truth. If tulips bloom, they are not making assertions that it is spring; but the testimony of a witness that tulips were observed to be blooming may be offered as circumstantial evidence of spring. If a dog limps, it is not thereby making an assertion and the testimony of a witness that the dog was observed to be limping may be offered as circumstantial evidence that the dog was injured. Similarly, the testimony of a witness that he or she observed a person limping may be offered as circumstantial evidence that the person was injured.[20]

Closer to the present case, but still illustrative of the difference between an out–of–court assertion that is admissible as circumstantial evidence and an out–of–court assertion that is inadmissible hearsay, is *United States v. Brown,* 490 F.2d 758, 762–63 (D.C. Cir. 1973) which holds that

> the statement "X is no good" circumstantially indicates the declarant's state of mind toward X and, where that mental state is a material issue in the case, such statement would be admissible with a limiting instruction. Technically it is not . . . hearsay since it is not being admitted for the truth of the matter alleged. We do not care whether X is in fact "no good" but only whether the declarant disliked him. However . . . the statement "I hate X" is direct evidence of the declarant's state of mind and, since it is being introduced for the truth of the matter alleged, must be within some exception to the hearsay rule in order to be admissible.

Another illustration of this principle is that

> in a will contest proceeding, if a witness testifies that he saw Uncle Azubah dress up nearly every day in his military uniform of World War II, march around the yard shouting orders, and proclaiming "I am General Patton,"

[20]*See* 11 J. Moore, *Federal Practice* § 800.01 (2d ed. 1982); K. Tegland §§ 331–33.

the witness' statement would not be hearsay. He is testifying to a matter of which he has personal knowledge—what Uncle Azubah did and said. He testifies in the court proceeding under oath, in the presence of the trier of fact, and is subject to cross–examination. And his testimony is not being offered for the purpose of proving the truth of Uncle Azubah's statement, but is being offered to prove Uncle Azubah's mental condition.[21]

(Footnotes omitted.)

In the trial practice when evidence is offered on the theory that it is not an oral, written or nonverbal assertion and, therefore, not hearsay, a preliminary determination under ER 104 may be required to resolve the issue. In such case the burden is on the party claiming that an assertion is intended; doubtful cases are to be resolved against the party and in favor of admissibility.[22]

For example, if in a child abuse case someone walks into a place where the child is, or that person's name is mentioned, and the child involuntarily reacts by trembling, running and hiding, screaming, crying, shouting "I hate you" or the like, then such would be nonassertive utterances or nonverbal conduct and not hearsay. Since the utterance or nonverbal conduct is not hearsay then whether the child was competent or not is immaterial.[23] Surely, it cannot reasonably be required that before a witness testifies to an infant crying out in pain, it must first be proved that the infant is competent to testify. Such testimony is admissible.

In the case before us, the child's utterances showing precocious knowledge of explicit sexual matters and certain private names for male and female genitalia, as testified to by witnesses, are examples of nonassertive utterances which are not hearsay and are admissible.

Another example is the testimony of a therapist. The

---

[21]J. Moore § 800.01, at VIII–2.

[22]J. Moore § 801.01[3.–1]; K. Tegland § 331, at 111.

[23]Cf. *State v. Ryan,* 103 Wn.2d 165, 174–75, 691 P.2d 197 (1984).

therapist testified that Penelope was playing with an anatomically correct male doll and on her own, as she was playing, "pushed the doll toward [the other therapist], within maybe one or two feet [of the therapist's] face and said something like either 'put this in your mouth' or 'suck me'. And at that point she was holding the penis of the doll in her hand." This was a combination of nonassertive verbal and nonverbal conduct; it was not hearsay and was admissible.

Other examples of nonassertive conduct by the child, as testified to by others, included the following: Penelope's moods fluctuating between openness and evasiveness; her uncomfortableness in handling the anatomically correct dolls and not wanting to undress the male doll; her fearfulness and anxiety in different contexts; her defensiveness when asked about "her secret"; her barricading herself behind furniture or stuffed toys when talked to; and when, at not seeing her father someplace where she had expected to see him, her fear that he was in jail. None of this was hearsay testimony and it was admissible.

All of the foregoing testimony was also appropriate for inclusion in the hypothetical question which counsel for the Department asked of its psychiatric expert witness.[24]

The weight to be accorded all such testimony, of course, was for the trier of fact.

ISSUE THREE.

CONCLUSION. An assertion made for the purpose of medical diagnosis or treatment is a recognized exception to the hearsay rule. The testimony of the child psychiatrist, Dr. Freeman, as to what the child told him in his interviews with the child, was not objectionable as hearsay.

Dr. Freeman testified that the parties agreed on his evaluating the child. He set up two appointments at which he interviewed and evaluated her. At trial he related what she had told him and, in large part based on what she had told him, expressed his professional opinion in several respects

---

[24]*Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 221–22, 562 P.2d 1276 (1977).

which are not here at issue.

■ ER 803(a)(4) expresses the "statements for purposes of medical diagnosis or treatment" *exception* to the hearsay rule and authorizes admission of the following evidence:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

This rule applies equally to treating physicians and physicians such as Dr. Freeman who are consulted for the purpose of enabling the physician to testify.[25] "The exception applies only to statements 'reasonably pertinent to diagnosis or treatment.' Thus, statements as to causation ('I was hit by a car') would normally be allowed, but statements as to fault (' . . . which ran a red light') would not."[26] Much, of course, depends on the context in which such statements are made.[27] A statement admissible under this exception is also subject to exclusion under ER 403[28] if unnecessarily cumulative or prejudicial. No such claim was made here, however, and no issue is raised on appeal as to Dr. Freeman's right to have expressed the opinions that he did.

We do not address the witness competency requirement in connection with this issue because implicit in this child psychiatrist's testimony is the assumption that he believed the child to be competent at the time he was interviewing

---

[25]K. Tegland § 367, at 223; *Kennedy v. Monroe,* 15 Wn. App. 39, 47, 547 P.2d 899 (1976).

[26]5A K. Tegland, Wash. Prac. § 367, at 224 (2d ed. 1982).

[27]*See State v. Mason,* 31 Wn. App. 680, 684, 644 P.2d 710 (1982); *Roberts v. Hollocher,* 664 F.2d 200, 204 (8th Cir. 1981).

[28]ER 403 reads:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

her.

What the child told Dr. Freeman when the doctor interviewed her, as conveyed to the court through the doctor's testimony, was not hearsay, was admissible in evidence and was properly before the trial court for consideration.

ISSUE FOUR.

CONCLUSION. The trial court properly rejected as inadmissible hearsay the testimony of the foster mother as to what she had overheard the child say to another child, and what the caseworker and therapists testified the child had told them and demonstrated to them in response to their questions. Since all of this testimony related the child's intentional out–of–court assertions, it was hearsay and inadmissible as evidence. The trial court did not err by striking it.

It does not matter whether a witness makes an out–of–court assertion orally, in writing or behaviorally. For example, a witness may be asked to pick out the culprit from a lineup. The witness may say, "the person on the left did it." Or the witness may fill out a written form designating the person on the left. Or the witness may silently point to the person. In any of these situations, the witness has made an assertion. If at trial a police officer relates what he or she observed the witness say or do at the lineup to identify the culprit, the testimony of the police officer is inadmissible because it is hearsay.

Thus, the foster mother's testimony at the trial as to what she overheard Penelope tell a friend, and what Penelope later told the foster mother when they were chatting together, was hearsay.

Following the occasion when Penelope thrust the unclad anatomically correct male doll toward the face of a therapist, the two therapists questioned her as to who had done that to her. The therapists' later testimony relating the child's answers to their questions, and the child's answers to other questions asked by the therapists and caseworker, were hearsay.

So, too, what the child demonstrated with clay, drawings and the spelling out of words in response to questioning by the foregoing witnesses, was hearsay. Similarly, the therapist's testimony that the child responded to questions about what "her secret" was by making a "zipping her lip" sort of motion with her hand and mouth, was also hearsay.

■ The Department argues, however, that "even if the testimony is found to be hearsay, the child's beliefs would fall within the 'then existing mental, emotional or physical condition' exception to the hearsay rule." This exception, ER 803(a)(3), authorizes the admission of the following evidence when relevant to a material issue in the case:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The settled law under this exception has been well summarized as follows:

> In Rule 803(a)(3), a hearsay exception is made for a declarant's out of court statement regarding a then–existing mental state or physical condition. The rule concerns only a statement of a mental or physical condition in existence when the statement was made. *Statements concerning past states of mind, sensations, physical conditions, and the like are not exempted from the hearsay rule under this provision.*[29]

(Italics ours.)

We will first assume for the purpose of this discussion (but do not hold), that an alleged dependent child's mental state is a material issue in a dependency case. The record clearly indicates that in making her assertions the child was relating past events and states of mind. The rationale behind the so–called "state of mind" exception to the hearsay rule is that an assertion by a person that describes his

---

[29]K. Tegland § 362, at 214.

or her *then existing feelings* will, in most cases, be more reliable than an attempted description of them, based on memory, sometime later on the witness stand. The child's statements under discussion are not within the intendment of that rationale. To follow the Department's theory would mean that any witness could testify to any intentional assertion the witness heard or saw the child make at any time, any place. Such an interpretation would result in the "state of mind" exception swallowing the hearsay rule.[30] The hearsay testimony in question is not admissible under ER 803(a)(3).

Obviously, because of the very considerable time that had elapsed between the events claimed to have happened, and the child's statements in response to questions about those events, the "excited utterance" exception to the hearsay rule[31] is also not applicable. The trial court correctly so ruled.

The remaining issues need not be addressed at length.

◼ The Department argues that the trial court improperly considered a statement volunteered by the father, while he was on the witness stand, to the effect that he received a good score on a polygraph examination. Granted, that absent a stipulation this was inadmissible if a proper objection had been interposed or a motion to strike been made.[32] The record is silent as to whether there was a stipulation or not. The Department, having remained silent on the subject at trial, is deemed to have waived any error.[33] The testimony having been admitted without objection

---

[30]K. Tegland § 362, at 214.

[31]ER 803(a)(2).

[32]*State v. Renfro,* 96 Wn.2d 902, 905, 639 P.2d 737, *cert. denied,* 459 U.S. 842 (1982).

[33]*See State v. Jones,* 70 Wn.2d 591, 597, 424 P.2d 665 (1967); *State v. Gallo,* 20 Wn. App. 717, 728, 582 P.2d 558 (1978).

could properly be considered.[34]

Error is assigned to the trial court making its memorandum decision its findings. No authority has been cited for this proposition nor argument made. We deem it abandoned.[35]

Error is assigned on the basis that "the Court of Appeals improperly denied the petitioners an appeal as of right of the trial decision of the Superior Court denying dependency." In this connection, the Department asks us to overrule *In re Watson,* 23 Wn. App. 21, 594 P.2d 947 (1979), holding to the contrary. It is unnecessary to consider that question in this case and we decline to do so. In the first place, we cannot consider matters referred to in the brief but not included in the record.[36] The record contains nothing to establish that the Court of Appeals refused to consider an appeal by the Department, though it does reflect that discretionary review was denied by that court. Furthermore, since we granted discretionary review herein, and have accorded the Department full appellate review of the case, there is no prejudice in any event.

The defendants claim error in a number of respects with reference to the way the trial court indicated it would hear the child's testimony if she testified, as she did not. Initially, counsel for the Department indicated the child was not incompetent to testify, but was unavailable because of her youth. Later, counsel for the Department indicated the child would not be called "unless all the evidence is going to be thrown out on the basis of being hearsay"; and lastly, that "in the opinion of the experts, the child would not be a competent witness, we would not call her. . . ." Then after the memorandum decision was handed down, the State

[34]*Callen v. Coca Cola Bottling, Inc.,* 50 Wn.2d 180, 183, 310 P.2d 236 (1957); *Carraway v. Johnson,* 63 Wn.2d 212, 214, 386 P.2d 420 (1963).

[35]*State v. Kroll,* 87 Wn.2d 829, 837–38, 558 P.2d 173 (1976).

[36]*State v. Stockton,* 97 Wn.2d 528, 530, 647 P.2d 21 (1982); *State v. Stevenson,* 16 Wn. App. 341, 345, 555 P.2d 1004 (1976).

filed a Motion To Reopen To Determine Competency of Child. The motion was not granted.

There was considerable colloquy on this subject between the court and counsel, the gist of which is the following:

[COUNSEL FOR THE DEPARTMENT]: I would hope that the court might interview her with a therapist or familiar comfortable person around.

THE COURT: With what?

[COUNSEL FOR THE DEPARTMENT]: A comfortable person present for her.

THE COURT: You mean you want a witness present while I question her, is that what you are saying?

[COUNSEL FOR THE DEPARTMENT]: No, I'm only saying, your Honor, that I feel she would be very fearful.

THE COURT: Well, I'll let you bring her into chambers. We're in a closed hearing now. This is not the same as dissolutions where I do talk to children and witnesses privately with a court reporter and tell them or indicate to them what they tell me is confidential. We have a different situation here and I couldn't do that. I'll let you present her on whatever basis you wish and she will be subject to the same questions as anybody else if she is competent to be a witness. I don't know anyway to be fair to both sides without putting it on that basis.

[COUNSEL FOR THE DEPARTMENT]: You would put her on the stand then, is that correct?

THE COURT: Either put her on the stand out here or in chambers. You would put her on the stand, counsel, if you wish to present her. I'm not going to make that choice.

[COUNSEL FOR THE DEPARTMENT]: Sure, I understand that.

THE COURT: We'll be in recess until 9:30 tomorrow morning and you may present your witness if you wish. If you decide not to, we'll hear final argument at that time.

The trial court did not commit error in this regard.[37]

To the extent that all of the Department's numerous arguments may not be answered herein, they are deemed nonmeritorious.

---

[37]*See In re McGee,* 36 Wn. App. 660, 662–63, 679 P.2d 933 (1984); *In re Akers,* 22 Wn. App. 749, 754, 592 P.2d 647 (1979), *overruled on other grounds in In re Hall,* 99 Wn.2d 842, 848–49, 664 P.2d 1245 (1983).

Remanded for further proceedings not inconsistent herewith.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, CALLOW, GOODLOE, and DURHAM, JJ., concur.