IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32268-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC MARCEL HARRIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Eric Harris appeals his second degree murder conviction for the shooting death of his brother, arguing that the trial court erred by admitting his statement to law enforcement, in excluding proffered defense testimony, and in finding chemical dependency. We affirm.

## FACTS

Eric Harris shot his brother, Larch Harris, with a shotgun during a confrontation witnessed by several others. He was arrested the next day. Once at the jail, Deputy Sheriffs Michael Gilmore and Michael George sought to interview him at the Stevens County Jail. They obtained Mr. Harris's consent to record and informed him of his *Miranda* rights including the right to have an attorney present during questioning. Mr. Harris averred that he understood his rights, but waivered on the decision to request an

attorney, saying "well I don't know. I think I should probably have an attorney present."

The following exchange occurred:

> **GILMORE**: Okay.
> **HARRIS**: (Inaudible) telling you, I mean --. I don't know. This is (inaudible).
> **GILMORE**: All right. It's your -- it's your prerogative, man. I mean, it is what it is. We've only got one side of it, but I don't want to force you into --
> **HARRIS**: Well, there's only going to be one side. The other guy's dead.
> **GILMORE**: Well, I haven't heard from you -- . . . See what I'm saying?
> **HARRIS**: Right.
> **GILMORE**: So, -- Like I say, I'm not -- I'm not going to push it -- on you. If you choose to talk to an attorney, that's fine. If you -- if you choose to talk to us, that's fine, too. But its – its [sic] got to be your decision, man.
> **GEORGE**: Got to be your decision, Eric.
> **HARRIS**: Let's just get it done.

Report of Proceedings (RP) at 24-25.

Mr. Harris proceeded to explain the events leading up to his arrest; he admitted that he fired the fatal shot. Prior to trial, he moved to suppress those statements. The trial court denied the motion, determining that Mr. Harris voluntarily waived his right to counsel. In so deciding, the trial court noted that his initial statement was equivocal and the ensuing colloquy to confirm whether he was invoking the right was proper.

The matter proceeded to jury trial on charges of first degree murder and unlawful possession of a firearm. The recorded interview was played for the jury during testimony from the two deputies. In addition, the State presented evidence from eyewitnesses, forensic experts, and investigators. To buttress its proof of premeditation, the State

2

enlisted the testimony of Mr. Harris's cellmate, Shane Lyng. Among other items, Mr.

Lyng's testimony included evidence that Mr. Harris lacked remorse for killing. In turn,

Mr. Harris proffered two witnesses to rebut the testimony, arguing that the witnesses

were intended as fact witnesses of Mr. Harris's post-incident but pre-arrest demeanor and

the fact that he was crying. The trial court found that evidence of his demeanor at the

time of the arrest was irrelevant and that his conduct of crying was being offered as an

assertion and therefore excluded as hearsay.

The jury acquitted Mr. Harris of first degree murder, but found him guilty of the

possession charge and of the lesser included crime of second degree murder. At

sentencing, the trial court determined that Mr. Harris had a chemical dependency based

on testimony that much of the conflict between him and his brother had been fueled by

drugs and alcohol. The court ordered drug and alcohol treatment and random urinalysis

upon his release. Mr. Harris then appealed to this court.

## ANALYSIS

Mr. Harris contends that the trial court should have excluded his statement to the

police, should have permitted defense testimony about his remorse, and should not have

found him chemically dependent. We address the contentions in that order.

*Request for an Attorney during Police Interview*

This court reviews findings of fact from a CrR 3.5 hearing for substantial evidence.

*State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997). Conclusions of law

3

derived from those findings, however, are given de novo review. *State v. Gasteazoro-Paniagua*, 173 Wn. App. 751, 755, 294 P.3d 857, *review denied*, 178 Wn.2d 1019 (2013). Unchallenged findings are verities on appeal. *Id.* Mr. Harris's challenge to the soundness of the court's conclusion that his statement was equivocal is subject to de novo review.

Custodial interrogations invoke a criminal suspect's *Miranda* rights. *State v. Radcliffe*, 164 Wn.2d 900, 905, 194 P.3d 250 (2008). Included in these rights is the right to have counsel present during the interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). A suspect may waive his or her right to counsel and proceed with the questioning if done in an informed, voluntary manner. *Radcliffe*, 164 Wn.2d at 905-906. Once waived, a suspect may, at any time, change his or her mind and request an attorney. *Id.* at 906. The questioning must cease. *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). To invoke the right, the request must be "unequivocal," meaning that the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). *Accord, Gasteazoro-Paniagua*, 173 Wn. App. at 755-756.

Alternatively, when a police officer reasonably cannot draw the conclusion that a suspect desires counsel, he or she is under no compulsion to cease questioning. *Radcliffe*, 164 Wn.2d at 906. This distinction prevents the process from forming "irrational

4

obstacles to legitimate police investigative activity." *Davis*, 512 U.S. at 460. To hold

otherwise would needlessly prevent police from questioning a suspect even in situations

where the suspect did not wish to have a lawyer present. *Id.*

Mr. Harris maintains that his statement, "[w]ell, I don't know. I think I should

probably have an attorney present," is an unequivocal invocation of his right to counsel.

We disagree. Washington courts do not consider statements that are accompanied by

conditions, words of ambiguity, or obfuscating language to be unequivocal. *Radcliffe*,

164 Wn.2d at 907 ("maybe [I] should contact an attorney"); *State v. Herron*, 177 Wn.

App 96, 103, 318 P.3d 281 (2013), *review granted*, 182 Wn.2d 1001, 342 P.3d 326

(2015) (requesting an attorney "if I am going to get charged" and "if it goes farther");

*Gasteazoro-Paniagua*, 173 Wn. App. at 756 ("I guess I'll just have to talk to a lawyer

about it"). Here, Mr. Harris's statement was couched in terms of indecision and

ambiguity. He used the phrases "I don't know" and "should probably." These

obfuscating phrases were enough to cast doubt on whether he truly desired to have an

attorney present. When the detectives sought to clarify, Mr. Harris resolved any doubt on

the topic by saying "[l]et's just get it done." Thus the trial court correctly concluded that

Mr. Harris's statement was equivocal. There was no error.[1]

---

[1] We therefore need not decide whether any error was harmless in light of the theory of self-defense. Mr. Harris did not testify and the only basis for the self-defense instruction came through the admission of his statement to the deputies.

5

*Relevance and Hearsay*

Next Mr. Harris contends that the trial court's exclusion of demeanor evidence violated his Sixth Amendment right to present a defense because it prevented his rebuttal of the State's evidence showing he lacked remorse. The trial court did not abuse its discretion.

The Sixth Amendment provides a criminal defendant the right to be "confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor." *State v. Smith*, 101 Wn.2d 36, 41, 677 P.2d 100 (1984). In plain terms, it is "the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The right is not absolute, though, and does not extend protection to irrelevant or immaterial evidence. *Smith*, 101 Wn.2d at 41; *State v. Weaville*, 162 Wn. App. 801, 818, 256 P.3d 426 (2011); *State v. Aguilar*, 153 Wn. App. 265, 275, 223 P.3d 1158 (2009).

We review rulings on admissibility of evidence for abuse of discretion. *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014). An abuse of discretion exists "when a trial court's exercise of its discretion is manifestly unreasonable or based on untenable grounds or reasons" *Id.* at 197. Trial courts are given considerable discretion when it comes to the admissibility of evidence to the point where "reasonable persons could take differing views regarding the propriety of the trial court's actions." *Id.* at 196. To that end, an abuse of discretion occurs where the ruling is contrary to law. *Id.* at 196-197.

6

Absent an abuse of discretion, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal. *Aguilar*, 153 Wn. App. at 275.

Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Testimony of a defendant's demeanor is admissible if relevant. *State v. Day*, 51 Wn. App. 544, 552, 754 P.2d 1021 (1988). The threshold to admit relevant evidence is low and even minimally relevant evidence is admissible. *State v. Gregory*, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006). Washington courts consider evidence of a defendant's conduct that tends to reveal the defendant's consciousness of guilt to be relevant. *State v. McGhee*, 57 Wn. App. 457, 461, 788 P.2d 603 (1990); *State v. Kosanke*, 23 Wn.2d 211, 215, 160 P.2d 541 (1945). Moreover, Washington courts have repeatedly permitted demeanor evidence when offered to provide foundation for fact witnesses who testify to their own impressions.[2]

Here, Mr. Harris argues that the trial court erred in excluding the testimony of Mary Lane Elizabeth concerning his demeanor on the day of the arrest, including his

---

[2] *State v. Craven*, 69 Wn. App. 581, 585, 849 P.2d 681 (1993) (a social worker properly testified to her observations of the defendant's difficulty in making eye contact and the fact that she was staring at the floor during her interview); *State v. Allen*, 50 Wn. App. 412, 418-419, 749 P.2d 702, *review denied*, 110 Wn.2d 1024 (1988) (detective allowed to testify that the defendant's grief over her husband's death did not appear to be sincere).

"reactions, the way he was acting, [and] the way he was carrying himself." RP at 1158.

He argued that the testimony was relevant because it would rebut Mr. Lyng's testimony

that he showed no remorse. The trial court disagreed and excluded the testimony as

irrelevant. Mr. Harris's proffered demeanor evidence was not probative rebuttal evidence

because he never tied this alleged remorse evidence to the killing. In contrast, the State's

demeanor evidence centered on Mr. Harris's attitude while he was in jail describing the

crime to his cellmate. There simply was no nexus between the defense "remorse"

evidence and the shooting. Absent testimony from Mr. Harris or a proffer that clearly

tied the remorse to the offense, it simply was not relevant. The trial court's conclusion

was not manifestly unreasonable under the circumstances.

The trial court's conclusion also resonated with each party's respective theory of

the case. Mr. Harris advanced a theory of self-defense at trial, thereby relieving the jury

of deciding responsibility for the underlying act. In fact, he argued in closing that,

although he shot his brother, he did not aim to kill. RP at 1499, 1508-1509. In other

words, he conceded the killing but argued that it was justified. Therefore, testimony that

he demonstrated remorse does not make the fact that he committed the underlying act

more or less likely. The State, on the other hand, was attempting to prove premeditation

and argued that Mr. Harris's behavior after the shooting showed a consciousness of guilt

for forming the design to gun down his brother. Consequently, the ruling that evidence

of his lack of remorse could be included in the State's case while defense evidence of

8

remorse should be excluded was a proper application of ER 401. Because there is no

Sixth Amendment right to irrelevant evidence, there is no violation of Mr. Harris's right

to present a defense. *Smith*, 101 Wn.2d at 41.

Next, Mr. Harris proffered Stacy Vollendorf to testify that she observed Mr. Harris

crying on the day following the shooting. The trial court excluded the evidence as

hearsay after finding that the defense intended to use it for the purpose of asserting that

the defendant was remorseful.

Hearsay is defined as any statement "other than one made by the declarant while

testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." ER 801(c). This definition extends beyond spoken words to include writing or

even non-verbal conduct. ER 801(a); *In re Dependency of Penelope B.*, 104 Wn.2d 643,

652, 709 P.2d 1185 (1985). Conduct is considered a statement when it is "assertive,"

meaning that it is intentionally being used as a substitute for words to express a fact or

opinion. *Id.* at 652. By contrast, an involuntary act such as trembling is nonassertive

conduct. *Id.* "[G]reetings, pleasantries, expressions of joy, annoyance or other

emotions" are also considered nonassertive when they are not intentional expressions of

fact or opinion and thus fall outside of hearsay. *Id.* The burden is on the objecting party

to persuade the court that the conduct in question was intended as an assertion; doubtful

cases are resolved in favor of admissibility. *Id.* at 654. Nonassertive conduct is governed

by principles of relevance. *Id.* at 652-653.

Here, the defense offered the fact that Mr. Harris was crying to make the assertion to the jury that he felt remorseful. To the extent that the court correctly discerned that the evidence was offered as a statement of remorse, it was properly excluded as hearsay. A party's out-of-court statement is not hearsay when offered against the party. ER 801(d)(2)(i). However, when offered by the party, the normal rules against hearsay apply. Mr. Harris could not offer his "statement" of remorse through another person.

To the extent that this evidence was not a statement, but constituted simple nonassertive conduct, it was not relevant for the same reasons that Ms. Elizabeth's testimony was not relevant. Emotions, even those that evidence remorse, are not relevant unless they related to the issues in the case. Mr. Harris wanted to establish that he was remorseful about killing his brother, but never presented evidence connecting his emotions the next day to the killing. He was free to so testify or otherwise establish a connection, but he never did so.

For both reasons, the trial court properly excluded the proposed rebuttal testimony. There was no abuse of discretion.[3]

---

[3] Here, too we need not address whether any error was harmless in light of the acquittal on the first degree murder count to which the State's evidence of remorse was directed.

*Chemical Dependency Condition*

Lastly, Mr. Harris argues that the trial court lacked authority to impose drug and alcohol treatment arguing that there was insufficient evidence to support the trial court's finding of chemical dependency. We disagree.

Crime related prohibitions are orders directly related to "the circumstances of the crime." RCW 9.94A.030(10). Determining whether a relationship exists between the crime and the condition "will always be subjective, and such issues have traditionally been left to the discretion of the sentencing judge." *State v. Parramore*, 53 Wn. App. 527, 530, 768 P.2d 530 (1989). Thus, we review sentencing conditions for abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). An abuse of discretion occurs when the imposition of a condition is manifestly unreasonable. *State v. Valencia*, 169 Wn.2d 782, 791-792, 239 P.3d 1059 (2010). Where a court finds that a defendant suffers from a chemical dependency, it is authorized to impose conditions that are reasonably necessary or beneficial in rehabilitating the offender. RCW 9.94A.607(1).

Here, the trial court found that Mr. Harris suffered from a chemical dependency based on collateral testimony from witnesses. The court explained that, based on this testimony, it was alerted to the fact that much of the conflict between Mr. Harris and his brother was fueled by drugs or alcohol. Consequently, the finding of chemical dependency was not manifestly unreasonable in light of the record and the court did not abuse its discretion.

11

No. 32268-8-III
*State v. Harris*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

12