[No. 29382. Department One. October 30, 1944.]

TOR W. KULL, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.[1]

'Reported in 152 P. (2d) 961.

*The Attorney General* and *Harry L. Parr, Assistant,* for appellant.

*Griffin & Gershon,* for respondent.

JEFFERS, J.—This is an appeal by the department of labor and industries of the state of Washington (hereinafter referred to as the department) from a judgment of the superior court of the state of Washington for King county, entered on the verdict of a jury, on December 27, 1943, in the case of Tor W. Kull against the department.

For some time prior to December 3, 1941, Kull had been in the employ of the Weyerhaeuser Timber Company as a timber faller, and, on the date last above mentioned, while so employed, was injured. A report was duly filed wherein the accident was described as follows:

"Falling timber into other trees 6″ snow on ground and when I stepped on old trees under snow and fell down."

On December 19, 1942, claimant was paid $49 time loss to December 18, 1942. On December 28, 1942, the claim was closed by the supervisor, and claimant was paid the sum of $480 for permanent partial disability.

On January 19, 1943, claimant made an application to the joint board for a rehearing and reopening of his case. In his application, claimant alleged that he was injured in the course of extrahazardous work while in the employ of Weyerhaeuser Timber Company on December 3, 1941; that he had received considerable treatment, and that he had been paid time loss to December 18, 1942; that since that time he had received additional treatment, and that he had not yet been able to return to work; that he was suffering from numerous disabilities in his chest, upper back, neck, arms, head, and nervous system; that prior to the accident

he was in good physical condition, was suffering from none of the disabilities above set forth, and was able to work continuously; that, when his condition becomes fixed, he will be entitled to a permanent partial disability award far in excess of $480.

The application for rehearing was granted, and the first hearing held on February 18, 1943, before E. J. Cummins, a duly authorized examiner for the joint board. At this hearing claimant and one Eli Larson testified.

Mr. Kull testified, in substance, that he was falling a tree, and that when it started to fall he tried to get out of the way. As near as we can determine from his testimony, he started to run along the trunk of a tree which was down, stepped on a slippery place and fell about ten feet, landing on his chest on the root of a tree. About three days later, claimant went to the Bridge Clinic in Seattle, and was treated by Dr. Seal. He was subsequently operated upon at the Bridge Clinic in Tacoma. In the meantime, at the request of the department, claimant had consulted and been examined by Drs. Brugman and LeCocq.

Claimant further testified that he had not worked since the accident; that he was so sore he could hardly button his vest; that his back bothered him between the shoulder blades; that his leg and both arms were getting numb and ached; that he fainted quite a few times. He testified as follows:

"Q. What condition is your neck and head? A. No good. Q. What troubles do you have? A. That comes from the back too. That is what the dizziness comes from, from the back. Q. You said that the neck pain comes from the back too? A. Yes. Q. Are you able to walk around a lot now? A. No, no, no. Q. Take a long walk? A. I sweat sitting here now. No, I don't take no long walk now. Q. Do the— A. Another thing too, I tell you I can't even sleep yet. It is about four weeks since I slept now, and sometimes for four or five weeks—and sometimes I get an hour or two. . . . Q. Before the accident did you have any dizziness or aches in your head or neck? A. I had aches in my head, all right, but that is a long, long time ago when I was hurt before— 1928, but it was all over."

Mr. Larson's testimony was to the effect that he had known claimant for many years before he was hurt, and had seen him frequently since that time; that since claimant was injured he (Larson) had noticed that claimant was crippled up and has had pains in his chest, shoulders, and head; that he had noticed that claimant became numb and his legs seem to be affected; that claimant worked nearly all the time before the accident.

A continuation was then taken to March 26, 1943, at which time Dr. Nathan K. Rickles was called by claimant and testified. We shall later refer to this testimony.

Another continuance was taken to May 21, 1943, at which time Drs. Joe Brugman, John F. LeCocq, George E. Price, and S. N. Berens were called by the department.

By an order dated June 7, 1943, the joint board sustained the action of the supervisor. On June 17th, claimant appealed from the order of the joint board to the superior court for King county, where on December 1, 1943, a jury returned a verdict to the effect that claimant should be paid an additional amount of $720. Judgment was entered on this verdict, and this appeal followed.

As appellant's assignments of error are based almost entirely upon the admission of certain parts of Dr. Rickles' testimony, we shall set it out in some detail. The doctor testified that he specialized in nervous and mental diseases. He was asked: "And Dr. Rickles, does traumatic neurosis fall within that field?" to which he answered: "Yes, it does." The doctor then stated he had had occasion to treat and examine men suffering from industrial injuries and to rate their disability. He stated that he had examined Mr. Kull three weeks before at his office. (It does not appear whether for the purpose of treatment or to enable the doctor to testify as an expert.) The doctor's testimony continues:

"Q. And will you tell us, briefly, what history he related to you and what his complaints were and your findings? A. He stated he was born in Finland forty-seven years ago and came to the United States in 1922. He had very little common schooling. His father is dead and his mother is

still living and he has five sisters and one brother all living in Finland. He has followed the trade of mining and logging. His past history, in 1928 he received a severe injury to his head by a falling tree which necessitated his being in Providence Hospital under Dr. Buckner's care for over a month. He was unable to return to work for about one year. On December 3rd, 1941, while in the employ of the Weyerhaeuser Timber Company, he was injured again while attempting to avoid a falling tree when he hit a tree stump on his chest, and at that time complained of pain in his chest and back and right shoulder. He was given emergency care such as taping and diathermy, and later on and in July 1942, he was operated on by Dr. Bridge in Tacoma. He remained in the hospital for six weeks and stated at that time they operated on him to remove an overgrowth on bone in his chest. Since this period, he has complained of considerable pain in his chest and still does, and aggravation of pain in his back and right shoulder. The pain sometimes becomes so severe that he feels like fainting. Recently, he has noticed numbness in both upper and lower extremities. Q. By that you mean the arms and legs, doctor? A. Yes. The other physical findings are essentially negative. I took a Wasserman, which was negative. Reflexes were normal. Blood pressure and heart action were normal. His weight was one hundred seventy-two, and his height was five feet nine and a half inches.

"MR. CUMMINS: That is within the normal limit?

"THE WITNESS: Yes.

"A. (Continuing) At the time of the examination, he was suffering from the result of an injury of December 3rd, 1941, when he received a crushing blow to his chest. His complaints are due, in part, to the injury and to the subsequent operation. In addition to that, I feel that his prior injury of 1928, in which he suffered a severe head injury sufficient to lay him up for over a period of one year also was active in many of the symptoms at the present time. I feel the man now is suffering to some extent as a result of that trauma, which has become very fixed in his mind so that many of the symptoms are aggravated by this condition. I feel that he has at the present time traumatic neurosis in addition to his actual physical injury. Q. And, doctor, you mentioned that you felt that many of his symptoms are traceable to the operation, or some of his symptoms are traceable to the operation. Will you tell us why? A. In a man of this particular mental make-up and particu-

larly true if a man should suffer a head injury, the operation has two factors. First, it fixes the injury in the patient's mind and makes it much more real and has a tendency to aggravate the symptoms and, secondly, there also is following surgery of the chest a great deal of pain and discomfort after, particularly when you remove bony portions of that chest. Q. Can you explain the meaning of the term 'traumatic neurosis'? A. Traumatic neurosis is rather indefinite. It takes in many conditions. It simply means that a person who has suffered some injury will later on, due to this injury and also to his own personality, develop certain symptoms which are not directly referable to the injury, they are quite vague and sometimes have no actual physical basis for them. They usually consist of dizziness, headaches, vague generalized pain, fatigue, irritability and inability to function normally. Q. And, doctor, according to the records in the case, he was paid time loss compensation up to December 18th, 1942. In your opinion, is he entitled to any additional time loss compensation?"

At this point in the testimony the only objection that was made to Dr. Rickles' testimony was offered by Mr. Cummins in the following words:

"My only objection is that you are asking a doctor to testify to a time prior to the time he examined the claimant, only the competency—beyond the time. The doctor hadn't seen him before."

At the time this case was presented to the jury in the superior court, Mr. Griffin, counsel for respondent, read from the transcript beginning on page 1 and ending on line 18, page 17. This covered the direct and cross-examination of respondent. Mr. Griffin also read from the transcript beginning with line 8, page 21, and continued to the end of the hearing held on February 18, 1943. Line 8, page 21, up to and including line 27, page 22, covered the direct and cross-examination of Mr. Larson. No objection was made to any of the testimony of claimant or Mr. Larson. Mr. Griffin then read to the jury the testimony of Dr. Rickles from the transcript beginning on line 5, page 25. No objection was made to this testimony until line 17 on page 27 was reached, when Mr. Parr, attorney for appellant, made the following objection:

"Mr. Parr: If the Court please, the state objects to the testimony beginning on line — the last word of line 17 of page 27 for the reason that the injury therein stated is *res adjudicata,* having happened in 1928, and this is not a proceeding for aggravation, but is an original proceeding.
"The Court: Objection overruled."

While from the above objection it is impossible to tell just how much of the testimony of Dr. Rickles subsequent to the last word on line 17, page 27, counsel meant to cover by his objection, and while we are unable to understand just what counsel meant by the objection, we assume it was intended to go to the following testimony:

"In addition to that, I feel that his prior injury of 1928, in which he suffered a severe head injury sufficient to lay him up for over a period of one year also was active in many of the symptoms at the present time."

After the objection had been overruled, Mr. Griffin continued to read from the transcript to line 18, page 28. This takes the testimony of the doctor to the point where Mr. Cummins made the objection hereinbefore referred to, in the hearing before the joint board. At this point, Mr. Parr stated: "If the court please, I renew the objection on line 19 of page 28, made by Mr. Cummins," whereupon the court ruled:

"Well, I don't think the objection was well taken for that reason. Objection overruled on the ground stated."

We continue the examination of Dr. Rickles:

"Q. Before answering that question, doctor [the question referred to was whether or not claimant was entitled to any additional time loss compensation], I would like to ask you one other. What history did he give you with respect to his working or refraining from work? A. He stated he has been unable to do any manual work for the reason any time he attempts to lift or bend, he suffers severe pain in his chest and back. Q. And, now, will you answer the question as to your opinion on his rights to additional time loss? A. I can state at the time I examined him I did not feel he was capable of doing any work at that time which was March 5th [1943], and with the history that he gave, I would have to assume the man had been unable to do any work during interim. Q. And, doctor, do

you feel that his condition is now substantially fixed so that his permanent partial disability can be rated? A. I think so. Q. And, doctor, what, in your opinion, is the amount of permanent partial disability that Mr. Kull has suffered? A. I think about fifty per cent. Q. That is, fifty per cent of unspecified permanent partial disability? A. Yes. Q. And that is as the result of the accident of December 3rd, 1941? A. That is right."

The witness was then cross-examined by Mr. Cummins:

"Q. I take it, doctor, that his claim of fatigue and that he almost faints at times is the part of his symptoms that you feel are largely his neurosis, are neurotic, are they not, doctor, based on the physical examination, how he appears, physically? A. Yes, I would say so. Q. And the best way to cure that part of his disability is, of course, to get his mind off of himself and back into some kind of work that he can do, isn't that it, doctor? A. Yes, if he is capable of doing any work, that would be the best thing for him. Q. And do you feel he has some residual of pain in the chest but you feel because of his mental condition and his attitude toward it, it has been aggravated over what the normal man would feel with reference to the same situation, isn't that it? A. Yes, I think so."

The only objections made before the department or the court are those herein set out.

Appellant claims the court erred in permitting the testimony of the injury of 1928 to go to the jury over the objection of the examiner and the department, which objection was renewed in court. Appellant also claims the court erred in not granting a new trial, and in not granting a judgment notwithstanding the verdict.

As we understand appellant's contentions relative to the admission of Dr. Rickles' testimony pertaining to the injury of 1928, and the error based upon the refusal to grant a new trial, they are that the petition for rehearing contained no reference to the injury of 1928, nor any claim of traumatic neurosis based thereon; that objection was timely made to the introduction before the department and before the superior court; that the objection to the testimony relative to the 1928 injury and to any reference to traumatic neurosis should have been sustained because

not mentioned in the petition for rehearing; and that the testimony relative to traumatic neurosis was not admissible because based upon what claimant had told the doctor.

Without deciding whether or not it is necessary to make an objection to evidence at the hearing before the department, in order that such an objection may be made when the evidence is presented before a court and jury, we are of the opinion that the objections made to the court are so indefinite as not to fairly apprise the court of the testimony objected to, or the reasons for the objection. We are further of the opinion the argument and reasons assigned in this court are based upon a different ground than those appearing in the objections.

■ Referring first to the objection made before the department, it was not made at the time Dr. Rickles testified relative to the 1928 injury, nor at the time he testified relative to traumatic injury, but after this testimony had all been given and after the witness had been asked whether or not in his opinion claimant was entitled to additional time loss compensation. Let us again look at this objection:

. "MR. CUMMINS: My only objection is that you are asking a doctor to testify to a time prior to the time he examined the claimant, only the competency—beyond the time. The doctor hadn't seen him before."

Certainly by this objection, if it can be considered an objection, the trial court was not apprised that the department was objecting to any evidence because the injury of 1928 was not referred to in the petition for rehearing, or because no complaint was made in the petition that claimant was afflicted with traumatic neurosis. Then again, to what testimony was appellant objecting? No testimony is specifically referred to. If the objection was directed to the last question, then it does not become material here, for the question of time loss compensation was not submitted to the jury.

In the case of *Nelson v. Department of Labor & Industries,* 9 Wn. (2d) 621, 115 P. (2d) 1014, we stated that, while the statute prescribes the necessary contents of ap-

peal petitions, this requirement is not jurisdictional; that it is for the benefit and convenience of the department, and, in order to take advantage of its noncompliance, the department must object at the time of, or before, the hearing.

While we are of the opinion that, if a proper objection had been made to that part of Dr. Rickles' testimony which it is claimed was not mentioned in the petition for rehearing, it would have been timely made, no such objection was, in our opinion, made.

We now come to the objections to Dr. Rickles' testimony made in the superior court. The first objection was made when counsel for respondent had read Dr. Rickles' testimony down to the last word on line 17, page 27 of the transcript. The doctor at this time had related much of the history of the case, as told him by claimant, including a reference to the claimed 1928 injury, the 1941 injury, the treatment he had received, and the facts relative to the physical examination of claimant by the doctor. When counsel reached the last word on line 17, page 27, Mr. Parr made the following objection:

"If the court please, the state objects to the testimony beginning on line — the last word of line 17 of page 27 for the reason that the injury therein stated is *res adjudicata,* having happened in 1928, and this is not a proceeding for aggravation, but is an original proceeding."

The court overruled the objection.

Here again the objection is so indefinite that it is impossible to tell how much of the subsequent testimony the objection referred to. Nor do we understand the objector's theory of *res adjudicata.* However, no question of *res adjudicata* is argued in appellant's brief, but appellant now argues that the admission of the testimony was erroneous because the doctor's opinion that the claimant had traumatic neurosis was based upon what claimant told him, and that such statements are not admissible for the purpose of proving the actual condition of the patient, but only for the purpose of affording the jury some means of determining the weight to be given to the opinion of the physician, citing *Estes v. Babcock,* 119 Wash. 270, 205 Pac.

12; *Kraettli v. North Coast Transp. Co.,* 166 Wash. 186, 6 P. (2d) 609, 80 A. L. R. 1520; and other authority.

While we do not find it necessary to pass upon the question of whether or not the doctor did base his opinion of claimant's condition, at least so far as traumatic neurosis was concerned, upon statements made to him by claimant, because of the conclusions reached by us herein, we desire to call attention to the cross-examination of the doctor by Mr. Cummins, which seems to intimate that the opinion of the doctor was based upon his physical examination of the claimant, at least in part.

"By MR. CUMMINS: Q. I take it, doctor, that his claim of fatigue and that he almost faints at times is the part of his symptoms that you feel are largely his neurosis, are neurotic, are they not, doctor, based on the *physical examination, how he appears, physically?* A. Yes, I would say so." (Italics ours.)

It may also be stated that, in the examination by the department of its own witness, Dr. Berens, the doctor was asked to relate the history of the injury, and in answering that question he made, among others, the following statement: "In 1928, he stated he had a head injury and was off work for over a year."

■■ Coming back now to the objection, we desire to say that, while we do not want to appear technical, we are of the opinion that neither the trial court nor this court is required to guess in regard to what testimony an objection refers to, or the reasons for such objection. A party objecting to evidence must designate the particular portion of the evidence to which he objects, and state why or wherein the evidence is improper, so as to afford the party offering the evidence an opportunity to obviate the objection or waive the testimony. Bancroft's Code Practice and Remedies, vol. 8, p. 8495. When an objection is so indefinite as not to call the court's attention to the real reason for the testimony's inadmissibility, error may not be based upon the overruling of the objection. *Coleman v. Montgomery,* 19 Wash. 610, 53 Pac. 1102. An assignment of error as to the admission of evidence upon a certain ground cannot be

made where no objection to the testimony was made on that ground. *State v. Poole,* 42 Wash. 192, 84 Pac. 727. Objection to evidence can be made in this court only upon the specific ground of the objection. *Bolster v. Stocks,* 13 Wash. 460, 43 Pac. 532, 534, 1099. See, also, *Wilbur v. Taylor,* 172 Wash. 537, 20 P. (2d) 1104.

Many cases from this court might be cited to sustain the rules last above announced, but we think the cases cited are sufficient to indicate the attitude of this court.

We are of the opinion the trial court committed no error in overruling appellant's objection to the introduction of the doctor's statement relative to the 1928 injury, nor in overruling its objection to his statement that claimant had traumatic neurosis, for the reasons that the objections were too indefinite, and that the basis of this assignment of error is on an entirely different ground than that stated in the objection.

While there is a conflict in the testimony of the doctors as to claimant's condition, we are of the opinion there was substantial evidence to sustain the verdict, and that the motion for judgment notwithstanding the verdict was properly denied.

Being of the opinion that no error was committed by the trial court in permitting the testimony of Dr. Rickles to go to the jury, we hold that the motion for new trial was also properly denied.

For the reasons herein assigned, the judgment of the trial court is affirmed.

SIMPSON, C. J., MILLARD, STEINERT, and GRADY, JJ., concur.