[No. 26307-2-I.    Division One.    December 7, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE SMITH, *Appellant.*

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Henry Corscadden, Deputy,* for respondent.

SCHOLFIELD, J. — Willie Smith appeals his conviction of violating the Uniform Controlled Substances Act, arguing that the trial court erred by admitting evidence of awards and commendations a police officer received, and that the

prosecutor should not have been allowed to ask Smith whether the police witnesses were lying. We affirm.

## FACTS

On December 11, 1989, Seattle Police Officer Victor Maes watched an area near Pike Place Market with binoculars in an undercover narcotics operation. He saw Smith conversing with a woman on the street. The woman removed a small white object from her mouth and placed it in Smith's open palm. Smith examined the item, placed it in his mouth, then his hand, then back into his mouth. Smith looked both directions, took out money and handed it to the woman.

Maes saw Smith and another suspect enter a doorway commonly used for drinking and using drugs. He radioed to Officers Miller and Grady that the men in the doorway should be arrested and directed Grady to check Smith's mouth for cocaine. Maes observed Grady arrest and handcuff Smith and lead him to a police car.

At the beginning of Grady's testimony, Grady stated he had attended five different police academies, had received training in drug enforcement and had been involved in more than 2,000 felony drug arrests in Seattle. The prosecutor asked Grady "[w]hat type of awards and certifications, commendations" he received as a member of the Seattle police. Over defense counsel's objection, Grady stated he was named Seattle Police Officer of the Year in 1989, had received 15 commendations and merits since 1984, graduated first from the Seattle Police Academy in academics and was ranked third in firearms.

Grady testified that he checked Smith's mouth and hands and observed no drugs. He said Smith was placed inside the police car, with his hands behind him and above the top of the backseat. Grady transported Smith to a temporary holding cell in the downtown precinct. As Grady began to remove Smith's handcuffs, he saw that Smith's right hand was in a fist. Grady asked Smith to open his hand, but Smith refused. Grady called for assistance. Officers Arata and Miller came to help, and Grady tried to pry Smith's

fingers open. Several seconds later, he saw a white substance in the "web" of Smith's fingers. He yelled to his fellow officers that Smith had cocaine.

Just then, Smith swung his body around. Grady saw the object fly through the air toward the corner of the cell. He searched the cell and found a small white rock consistent with the object he saw between Smith's fingers.

Smith presented an entirely different story. He testified he was waiting for a bus in the Pike Place Market area when several police officers approached a large crowd at the bus stop, chose six or seven black persons from the crowd and ordered them to put their hands against the wall. Grady searched Smith on the street and again at the precinct. Grady told Smith he must be lucky because he had no drugs, no marked money and no warrants. After Smith told Grady he was going to sue the police for false arrest, Smith testified that Grady pushed him into a holding cell while he was still handcuffed, and kicked and punched him. Three officers strip searched Smith, finding nothing. Smith alleged that Grady left the cell and returned about 5 minutes later with a bag containing a white substance, saying "I got it. . . . I got him."

On cross examination, the prosecutor asked Smith if the officers were "lying" when they testified that Grady arrested him quickly and removed him from the area. The prosecutor again asked Smith if the officers were lying when they testified that the reason they moved so quickly was because they were in the middle of a "major bust operation". Smith answered yes to both questions.

Officer Arata testified he recognized Smith as a person who was involved in a scuffle in a holding cell with Grady and Miller. When he entered the cell, the scuffle had ended. Grady came out with a piece of suspected cocaine in his hand.

In closing argument, the prosecutor again referred to Grady's commendation:

> The State argues also that Officer Grady, 1989 police officer of the year, 15 commendations, has no reason to get bent out

of shape. He is a professional. He's gone to five police academies. He's made thousands of drug arrests. What makes this one any different? This is just another drug bust and yet Mr. Smith's story is that Officer Grady is going to risk a promising and very bright police career to arrest him on one rock.

Defense counsel did not object during final argument. The jury found Smith guilty as charged, and Smith appeals.

## DISCUSSION

Smith contends that evidence of commendations and awards is not probative of the officer's truthfulness, is particularly likely to taint the jury, and is improper as character evidence. The State argues that the questions were normal introductory foundation questions any expert would be asked regarding his qualifications and expertise in a given field.

■■ Under ER 401, relevant evidence is that which has any tendency to make the existence of any fact of consequence more probable. Determination of relevancy is within the discretion of the trial court, and will not be disturbed absent an abuse of discretion. *State v. Rupe*, 101 Wn.2d 664, 686, 683 P.2d 571 (1984). A trial court's error in admitting evidence is not prejudicial unless, within reasonable probability, the outcome of the trial would have been materially affected had the error not occurred. *State v. Robtoy*, 98 Wn.2d 30, 44, 653 P.2d 284 (1982); *State v. Medcalf*, 58 Wn. App. 817, 823, 795 P.2d 158 (1990).

■ Evidence of a witness' credibility may be supported under ER 608(a), but only if the evidence refers to the witness' truthfulness or untruthfulness, and only after the witness' truthfulness has been attacked.[1] Here, there was no testimony about what the awards or commendations were for. Thus, there was no basis on which one could consider a particular commendation and treat it as logically bearing on

---

[1]ER 608(a) states:

"The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by reputation evidence or otherwise."

Grady's credibility as a witness. To the extent that Officer Grady's commendations and awards were meant to support his truthfulness, the evidence was not admissible under ER 608(a) because the State has not shown that the evidence was germane to Officer Grady's truthfulness, and the parties do not argue that Grady's reputation for truthfulness had been attacked.[2]

The State argues that the evidence was admissible under ER 702. ER 702 states that if specialized knowledge will assist the jury to understand the evidence or determine a fact at issue, a properly qualified witness may testify.[3]

■ It is well established that the State may introduce a police officer's experience and training to reinforce the basis of his knowledge as a witness, or establish the reliability of his testimony concerning police procedure and criminal practices. Smith does not deny this. But here, the State's professed purpose in presenting the evidence of awards was to lay background in presenting expert witnesses under ER 702. Everything Grady testified to was supported by his training and experience, and needed no extra foundation from the awards and commendations. More importantly, Grady's function at trial was not as an expert expressing opinions on police procedure, but rather, as the primary witness testifying to the facts surrounding Smith's arrest and search. We find in these circumstances ER 702 offers no justification for evidence of Grady's awards and commendations.

■ Smith alleges the prosecutor meant to improperly appeal to the jury's prejudice. In showing prosecutorial mis-

---

[2]Had evidence of the awards and commendations been introduced to rebut Smith's attack on Grady's character, conceivably the evidence would then be properly admitted. However, on this we express no opinion, because the issue was not adequately presented and argued.

[3]ER 702 states:
"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

conduct, "the defendant must show misconduct and resulting prejudice." *State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985). Comments meant to appeal to the jury's prejudice and encourage it to render a verdict on facts not in evidence are improper. *State v. Dennison*, 115 Wn.2d 609, 801 P.2d 193 (1990).

In *State v. Heaton*, 149 Wash. 452, 271 P. 89 (1928), the court reversed the defendant's conviction where the prosecutor stated he had worked with the police witnesses for a long time and therefore knew their character. The court found that the declarations by the prosecutor

> transcended the bounds of legitimate argument and amounted to an attempt on the part of counsel to testify as to the witnesses' good character. Such a statement as this cannot be met by any answering argument, and it is vain to attempt to do away with the prejudicial effect of such assertions by an instruction of the court to the effect that argument of counsel is not to be regarded as evidence.

*Heaton*, at 460-61. Other cases are in accord and generally hold that prosecutors should not bolster a police witness' good character. For example, in *People v. Ali*, 158 A.D.2d 460, 551 N.Y.S.2d 54 (1990), the court found that the prosecutor's remarks concerning the police witnesses' membership in an "elite" unit, and an officer's commendation and five awards were irrelevant and improper, though harmless. In *People v. McKutchen*, 76 A.D.2d 934, 429 N.Y.S.2d 460 (1980), the court reversed a conviction where, during summation, the prosecutor improperly sought to bolster the credibility of an "all-important" witness by implying that the witness was " 'an outstanding police officer' " with " 'a distinguished career' ". In *State v. Fader*, 358 N.W.2d 42 (Minn. 1984), the prosecutor elicited testimony that the police officer received the "Officer of the Year" award. The court stated that it was "not convinced" about the

> propriety of eliciting evidence about the awards an officer has received, particularly where the officer is not called to give expert opinion testimony, but is called merely to testify as to his investigation.

*Fader*, at 47. Normally, the court stated, such bolstering evidence would artificially increase probity, but the court

determined there was no error because defense counsel used the title "Policeman of the Year" as a refrain everywhere the policeman erred in his conduct, thus using it against the State in closing.

Here, testimony about Grady's awards and commendations during trial appear to be an attempt to improperly elevate Grady's character.[4] Because they make Grady's truthfulness neither more nor less likely, we find they have no legitimate evidentiary purpose.

However, we are not persuaded that the outcome of the trial would have been different had the evidence of the awards and commendations not been allowed in. The jury could legitimately consider Grady's properly allowed substantial training and experience in 2,000 drug arrests as a foundation for his testimony, testimony which was detailed and in every respect credible. We have no reason to believe that the evidence of commendations and awards caused the jury to give more credibility to Grady's testimony.

Smith next contends that the prosecutor committed reversible misconduct in asking Smith to express an opinion as to whether Officer Grady lied, because the case turned upon whether the jury chose to believe Smith or Grady. The State argues that Smith did not properly object, and that the questioning was neither flagrant nor ill intentioned.

In cross examination, the prosecutor asked Smith whether the prosecutor was lying:

[Q:] And did you hear Officer Grady and Maes tell about how quickly they grabbed you and got you out of there?
A: Yes, I did. I couldn't believe it.
Q: So, they are lying when they say that; is that correct?
A: Yes, they are.
Q: And they are lying when they say that the reason why they grabbed you quickly, handcuffed you and got you out of there was because they were in the middle of a major bust operation. They were lying when they say that; is that right?

---

[4]We note defense counsel's failure to object to the prosecutor's closing argument in which he reminded the jury of Grady's awards and commendations, and expressed incredulity in Smith's story that Grady "is going to risk a promising and very bright police career to arrest him on one rock."

A: Yes, sir, they are.
Q: So then they were holding a three-ring circus by your testimony; isn't that correct?
MR. KOLKER: Objection, your Honor, the prosecutor is putting words in the witness' mouth.
THE COURT: Overruled.

■ Two recent cases from this division have established the impropriety of provoking the defendant to call a police witness a liar. In *State v. Barrow*, 60 Wn. App. 869, 875, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991), the court determined that such characterization during closing argument was improper and constituted misconduct. However, the *Barrow* court declined to reverse the conviction because of the defense counsel's failure to adequately object during trial.

Similarly, in *State v. Casteneda-Perez*, 61 Wn. App. 354, 810 P.2d 74, *review denied*, 118 Wn.2d 1007 (1991), the court concluded that asking a witness to express an opinion as to whether or not another witness is lying invades the province of the jury. *Casteneda-Perez*, at 362. There, the prosecutor asked on cross examination whether the defendant was saying the police officer was lying. Although the court found the practice improper and condemned it, it did not reverse the conviction because the improper cross examination had been repeated several times before being properly objected to. Without a proper objection, the trial court had not technically erred in admitting the testimony. Additionally, the damage done was not sufficient to affect the outcome of the trial. *Cf. State v. Graham*, 59 Wn. App. 418, 798 P.2d 314 (1990); *State v. Stover*, 67 Wn. App. 228, 834 P.2d 671 (1992) (questions designed to compel defense witnesses to state whether other witnesses lied are improper).

■ When, as here, an objection does not call the trial court's attention to the real reason for the testimony's inadmissibility, "error may not be based upon the overruling of the objection." *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976) (quoting *Kull v. Department of Labor & Indus.*, 21 Wn.2d 672, 682, 152 P.2d 961 (1944)).

Unless a defendant objected to the improper comments at trial, requested a curative instruction, or moved for a mistrial, reversal is not required unless the prosecutorial misconduct was so flagrant and ill intentioned that a curative instruction could not have obviated the resultant prejudice.

*State v. Barrow, supra* at 876.

Here, defense counsel objected to the prosecutor's "putting words in the witness' mouth", referring, presumably, to the prosecutor's use of the phrase "three-ring circus". Defense counsel did not object to the prosecutor's invitation to Smith to call the police witness' testimony "lies". No objection was made that an acquittal would be equivalent to finding the police officer had lied. Thus, defense counsel failed to preserve error by making a timely objection.

Furthermore, the issues concerning lying (how fast the arrest occurred and how large the bust operation was) were not central to Smith's defense, and we find such evidence was not prejudicial.

Affirmed.

BAKER and AGID, JJ., concur.