
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71646-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUSLAN YURIEVICH BEZHENAR, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 16, 2014 |
| | ) | |

VERELLEN, A.C.J. — Ruslan Bezhenar appeals his conviction for harassment-threat to kill, arguing, in part, that the prosecutor committed misconduct during closing argument. The State concedes the prosecutor's misstatement of the burden of proof and bolstering of witnesses were improper, but argues that any error is harmless. Misstatements of the burden of proof are implicitly flagrant, ill intentioned, and prejudicial. Additionally, the cumulative effect of the misstatement of the burden of proof and improper bolstering likely affected the outcome of the trial. Therefore, we accept the State's concession, reverse Bezhenar's conviction, and remand for a new trial.

We also conclude that the State presented sufficient evidence that Bezhenar threatened to kill a police officer, but decline to reach Bezhenar's additional arguments on appeal.

### FACTS

Bezhenar's mother owned a building in downtown Centralia and allowed him to live in an upstairs apartment. In July 2012, the city determined that the building was

uninhabitable and posted a sign indicating that any "unauthorized" person that entered the building would be subject to arrest.

A few days later, police responded to a call that someone had entered the building by climbing up a drain pipe. They found Bezhenar inside. After Bezhenar was removed from the building, he made veiled threats to Officer Michael Lowrey.

The State charged Bezhenar with one count of harassment–threat to kill and one count of criminal trespass in the first degree. The State alleged that there was an aggravating circumstance because the threat to kill was made against a law enforcement officer. A jury found Bezhenar guilty of felony harassment and answered yes to the special allegation regarding Lowrey's status as an officer, but it was unable to reach a verdict on the trespass charge. Bezhenar appeals.

## DISCUSSION

### Prosecutorial Misconduct

Bezhenar argues that the prosecutor committed numerous instances of misconduct that require reversal of his conviction. The State concedes that the prosecutor's misstatement of the burden of proof and bolstering of the police officers' testimony were improper, but contends the misconduct does not compel reversal.

"The right to a fair trial is a fundamental liberty secured by the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution."[1] "Prosecutorial misconduct may deprive a defendant of his or her constitutional right to a fair trial."[2] "Although a prosecutor has wide latitude to

---

[1] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703, 286 P.3d 673 (2012).
[2] Id. at 703-04.

2

argue reasonable inferences from the evidence," he or she "must 'seek convictions based only on probative evidence and sound reason.'"[3]

In order to prevail on a claim of prosecutorial misconduct, a defendant is required to show that the prosecutor's conduct was both improper and prejudicial.[4] The prejudice prong requires that the defendant show a substantial likelihood that the misconduct affected the jury verdict.[5] If the defendant fails to object at trial, the errors he complains of are waived unless he establishes that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice.[6] We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions.[7]

First, Bezhenar argues, and the State concedes, that the prosecutor committed misconduct by misstating the burden of proof. We accept the State's concession.

"Misstating the basis on which a jury can acquit insidiously shifts the requirement that the State prove the defendant's guilt beyond a reasonable doubt."[8] "Due process requires the State to prove, beyond a reasonable doubt, every element necessary to

---

[3] Id. at 704 (quoting State v. Casteneda-Perez, 61 Wn. App. 354, 363, 810 P.2d 74 (1991)).

[4] Id.

[5] Id.

[6] Id.

[7] State v. Anderson, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009).

[8] Glasmann, 175 Wn.2d at 713.

constitute the crime with which the defendant is charged."[9] Misstating or trivializing this burden is misconduct.[10]

Here, the prosecutor paraphrased the jury instruction describing reasonable doubt, offered an explanation of what "abiding belief" means, but then made a sweeping simplification of reasonable doubt:

> Now, reasonable doubt, "Reasonable doubt is a doubt for which a reason exists and may arise from the evidence or lack of evidence. It's doubt that would exist in the mind of a reasonable person after fully, fairly, and carefully considering all the evidence or lack of evidence."
>
> Now, "[I]if after such consideration you have an abiding belief in the truth of the charges, then you are satisfied beyond a reasonable doubt." What does that mean? Abiding belief. It's a belief that sticks with you. *If you feel it in your gut today, if you feel it in your gut next week that he's guilty, then you are satisfied beyond a reasonable doubt. If you think he did it, then you are satisfied beyond a reasonable doubt.*[11]

The prosecutor's statements that the jury could convict if they "feel it in [their] gut" and "think he did it" improperly minimized the State's burden of proof.[12] This was a serious misstatement of the law. A person can "think" or "feel" that a defendant "did it"

---

[9] Id.

[10] Id.; see also State v. Warren, 165 Wn.2d 17, 27, 195 P.3d 940 (2008) (holding improper prosecutor's statement that the burden of proof beyond a reasonable doubt "doesn't mean, as the defense wants you to believe, that you give the defendant the benefit of the doubt").

[11] Report of Proceedings (RP) (Nov. 29, 2012) at 163 (emphasis added).

[12] We note that in State v. Curtiss, 161 Wn. App. 673, 205 P.3d 496 (2011), Division II of this court held that the following statement by the prosecutor during rebuttal in closing argument was not improper: "Do you know in your gut—do you know in your heart that Renee Curtiss is guilty as an accomplice to murder? The answer is yes." Id. at 701. Curtiss is distinguishable from this case because the prosecutor did not make the above statement when describing reasonable doubt or the burden of proof. Rather, it was a simplistic argument urging the jury to render a just verdict that was supported by the evidence. Id. at 701-02.

4

whether or not the State has proven all elements of the charged crime beyond a reasonable doubt.

Next, the State concedes that the prosecutor committed misconduct by bolstering the testimony of the police officers with facts not in evidence. We accept the State's concession.

"Although prosecuting attorneys have some latitude to argue facts and inferences from the evidence, they are not permitted to make prejudicial statements unsupported by the record."[13] "And it is generally improper for prosecutors to bolster a police witness's good character even if the record supports such argument."[14]

Here, the State's only witnesses were three police officers, each of whom testified that Bezhenar threatened Officer Lowrey. The prosecutor posed the following question to the jury during his closing argument:

> Honestly, think about credibility. Who has more to lose? The officers? I mean, they're going to put their career on the line for conspiring to make all this stuff up?[15]

There was no evidence that the police officers could lose their jobs if they falsely accused Bezhenar. Instead, the prosecutor improperly relied upon the good character of the officers to bolster their credibility.[16]

---

[13] State v. Jones, 144 Wn. App. 284, 293, 183 P.3d 307 (2008).

[14] Id.

[15] RP (Nov. 29, 2012) 171.

[16] See State v. Smith, 67 Wn. App. 838, 844, 841 P.2d 76 (1992) (acknowledging that prosecutors should not bolster a police witness's good character and citing cases from other jurisdictions in accord with that proposition); State v. Allen, 161 Wn. App. 727, 746, 255 P.3d 784 (2011) aff'd, 176 Wn.2d 611 (2013) (improper vouching occurs if the prosecution places the prestige of the government behind the witness).

Because defense counsel did not object to closing argument, we must determine whether these improper statements were so flagrant and ill intentioned that they could not have been cured by an instruction to the jury. In determining whether the misconduct is so flagrant and ill intentioned that it warrants reversal, we consider its prejudicial nature and its cumulative effect.[17]

In State v. Glasmann,[18] our Supreme Court recently held that a misstatement of the burden of proof is per se flagrant and ill intentioned:

> Shifting the burden of proof to the defendant is improper argument, and ignoring this prohibition amounts to flagrant and ill-intentioned misconduct. Due process requires the prosecution to prove, beyond a reasonable doubt, every element necessary to constitute the crime with which the defendant is charged. Misstating the basis on which a jury can acquit insidiously shifts the requirement that the State prove the defendant's guilt beyond a reasonable doubt.[19]

Here, the prosecutor's misstatement of the burden of proof was flagrant and ill intentioned and supports reversal of the conviction.

Further, the cumulative effect of the misstatement of the burden of proof and the bolstering of the police officers' testimony supports reversal. The State did not present overwhelming evidence of guilt. The State's only evidence in this case rested upon the testimony of three police officers. The entire case turned upon whether the jury found the police officers more credible than Bezhenar and his mother. There is a substantial likelihood the cumulative impact of the prosecutor's improper statements affected the jury's verdict. The prosecutorial misconduct requires reversal.

---

[17] State v. Boehning, 127 Wn. App. 511, 518, 111 P.3d 899 (2005).

[18] 175 Wn.2d 696, 286 P.3d 673 (2012).

[19] Id. at 713 (internal citations omitted).

6

*Sufficiency of the Evidence*

Because reversal and dismissal would be the remedy for insufficient evidence,[20] we address Bezhenar's argument that the State presented insufficient evidence that he threatened to kill Officer Lowry and that Officer Lowry reasonably feared that Bezhenar would kill him.

When reviewing a sufficiency of the evidence challenge, this court views the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[21] All reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant.[22] It is the role of the trier of fact, not the appellate court, to resolve conflicts in the testimony and to evaluate the credibility of witnesses and the persuasiveness of evidence.[23]

For felony harassment, the State bears the burden of proving beyond a reasonable doubt that the defendant made a threat to kill and the victim reasonably feared that the threat would be carried out.[24] The fact finder applies an objective standard to determine whether the victim's fear that the threat will be carried out is reasonable.[25] This requires the trier of fact to "consider the defendant's conduct in context and to sift out idle threats from threats that warrant the mobilization of penal

---

[20] State v. Hickman, 135 Wn.2d 97, 103, 954 P.2d 900 (1998).

[21] State v. Williams, 144 Wn.2d 197, 212, 26 P.3d 890 (2001).

[22] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[23] State v. Carver, 113 Wn.2d 591, 604, 781 P.2d 1308 (1989); State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

[24] RCW 9A.46.020(1)(a)(i), (2)(b).

[25] State v. Kilburn, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004).

sanctions."[26] "[T]he nature of a threat depends on all the facts and circumstances, and it is not proper to limit the inquiry to a literal translation of the words spoken."[27]

Here, Officer Lowrey testified to the threats Bezhenar made to him:

A:    When we were doing some other stuff there, casework, he was making comments to me stating that he was going to—he was going to get me. He told me he'd see me again, to which I replied, "You said that last time I dealt with you." And he continued making threats to me, telling me that this was different, that he was going to get me.

We hear it a lot on patrol. I hear it quite often that I'm going to sue you or I'm going to get you or I'm going to own your house. I mean, it's a common occurrence. So my reply is only, "Just do me a favor and spell my name right in a lawsuit." You know, I hear it all the time so we kind of let it slide off. But stating that to him, he made it clear that it was not going to be a lawsuit, this did not involve monetary issues, this was going to be dealt with a different way.

Q:    How did he say that it was going to be dealt with?

A:    He told me that this is about revenge, this is not a lawsuit, and that I was going to be sorry.

I told him that he was crossing the line and that if he showed up at my house, he would be shot on sight. And he laughed and said not to worry, it wouldn't be him, it would be somebody that I didn't know that shows up to my house.

Q:    What did you take these threats to mean?

A:    I took them to mean he was planning on doing something harmful to me or my family.

Q:    Were you in fear that he was going to kill you at some point?

A:    I was more in fear for my family than me. When you take the job you realize it's a dangerous job. But there's lines that you cross and when you start threatening your family, have a newborn baby, my wife, that's too much. And then going further and even stating— saying that it's not going to be me, it's going to be somebody you

---

[26] State v. Alvarez, 74 Wn. App. 250, 261, 872 P.2d 1123 (1994).

[27] State v. C.G., 150 Wn.2d 604, 611, 80 P.3d 594 (2003).

don't know, it just—I believed it 100 percent, so much so that I called not only my current wife, I called my ex -wife as well just because she still lives halfway local and depending on how you find an address, God forbid you find her address and show up thinking that I'm there and do something to her and my kids up there so.

Q: So you thought he was serious? You took these threats seriously?

A: Absolutely. I've been threatened, 15 years, probably 3, 400 times minimum, lawsuits, even people saying, "I'm going to—if I see you off duty I'm going to kick your rear." They don't make that nice of a statement. But I've been threatened hundreds and hundreds of times, probably three I've taken serious.

Q: Was this instance one of them?

A: This was one of them.[28]

Bezhenar argues there was no evidence that he threatened to kill Officer Lowrey. But under the facts and circumstances of this case, that argument is unpersuasive. It is true that there is no evidence that Bezhenar said outright that he was going to kill Officer Lowrey. But taking the evidence in a light most favorable to the State, a reasonable jury could have found that Bezhenar's statements implied that he was going to kill Officer Lowrey. Bezhenar did not need to use the word "kill" in order to communicate a threat to kill.[29]

Similarly, there is sufficient evidence that Officer Lowrey reasonably feared that Bezhenar would carry out the threat. Officer Lowrey did not explicitly state that he feared for his life. But when asked whether he feared Bezhenar was going to kill him, Officer Lowrey implied that he had that fear both for himself and for his family, although he was "more in fear for my family than me."[30] He took Bezhenar's threat so seriously

---

[28] RP (Nov. 28, 2012) at 46-48.

[29] See C.G., 150 Wn.2d at 611.

[30] RP (Nov. 28, 2012) at 47.

9

that he called his family to warn them. Taking this evidence in the light most favorable to the State, a reasonable jury could have found that Officer Lowrey reasonably feared that Bezhenar would carry out the threat to kill him.

We reverse Bezhenar's conviction for felony harassment based on prosecutorial misconduct and remand to the trial court. Given this disposition, we need not reach the other issues raised on appeal.

WE CONCUR: