## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46865-4-II |
| Respondent, | |
| v. | |
| THOMAS ASBACH | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Thomas Asbach appeals his conviction and sentence for second degree burglary of a detached garage. We hold that (1) the prosecutor's closing argument did not comment on the credibility of the witnesses and therefore was not improper, (2) defense counsel was not ineffective for failing to object to the prosecutor's closing argument, and (3) Asbach's arguments in his statement of additional grounds (SAG) have no merit. Accordingly, we affirm Asbach's conviction and sentence.

## FACTS

At approximately 7:00 AM on April 15, 2014, Tumwater patrol officer Bryent Finch responded to a report of a suspicious vehicle parked at a residence. The property was overgrown and included a single family home and detached garage. The garage had rollup garage doors on one side and a regular door on an adjacent side. Finch saw a vehicle parked in the driveway.

Finch called for a second officer and walked onto the property where he could maintain a view of the house and garage doors while he waited. While Finch was waiting, he saw Marialuz Madrigal exit the garage through the side door carrying a trash bag. Finch began to speak with Madrigal, but still watched the garage. As he and Madrigal were speaking, Finch saw Asbach

exit the garage through the side door. Finch determined that Madrigal and Asbach did not live in the house. The State charged Asbach with second degree burglary.

At trial, Finch testified that Asbach initially said that he did not have permission to be on the property, but that he had taken a glucose meter from the garage. Finch stated that Asbach explained that he and Madrigal were on the property because they had been driving back from a casino and were looking for a place to have sex. Asbach purportedly told Finch that he went into the garage intending to look for vinyl records. Lieutenant Steven Barclift, who arrived on the scene in response to Finch's call, testified that Asbach said that he had heard that there were collectible records on the property. Barclift also testified that Asbach said that he was interested in finding a copy of *The White Album* by the Beatles, but that he could not find the record. Barclift heard Asbach say that he had left the glucose meter on a table inside by the door.

The property owner testified that there was a box of glucose meters in the garage as well as boxes of vinyl records. He also testified that Asbach did not have permission to be on the property.

Asbach admitted that he did not have permission to be on the property. However, he testified that he never said anything about a glucose meter, looking for a place to have sex, or looking for vinyl records. He testified that he was on the property to look for water for his overheated car. He said that he told Finch about his car problems and how he was looking for water for the car. Asbach also testified that he was never inside the garage, but that he was walking around it looking for a faucet.

Finch denied having a conversation where Asbach said that he was on the property to look for water for his overheated car. Barclift also testified that he did not hear Asbach say anything about looking for water.

During closing argument, the prosecutor argued:

[T]his case presents what the State submits are two very, very different versions of events. And I say two, because the State would submit that the officer's [sic] versions very much support each other and are consistent with each other, and so I talk about that as one version.

Verbatim Report of Proceedings (VRP) (Oct. 1, 2014) at 414. Asbach did not object to this statement.

The jury found Asbach guilty of second degree burglary. Asbach did not appear for his scheduled sentencing, and the trial court issued a bench warrant. Asbach later was present for a new sentencing hearing. The parties agreed that Asbach had an offender score of 11 and a standard sentencing range of 51-68 months. The State argued for a sentence of 68 months and defense argued for a sentence of 51-53 months. The trial court imposed a sentence of 68 months and $800 in mandatory legal financial obligations (LFOs).

Asbach appeals his conviction and sentence.

ANALYSIS

A. PROSECUTORIAL MISCONDUCT

Asbach argues that the prosecutor engaged in misconduct by stating that Finch's and Barclift's testimony were consistent with and supported one another. He argues that the prosecutor's comment was improper because it constituted (1) vouching, (2) bolstering, or (3) a comment on truthfulness. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). "The State has wide latitude in drawing and expressing reasonable inferences from the evidence, including inferences about credibility." *State v. Thompson*, 169 Wn. App. 436, 496, 290 P.3d

996 (2012). Misconduct is prejudicial if there is a substantial likelihood it affected the verdict. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

1. Vouching

Asbach argues that the prosecutor vouched for Finch's and Barclift's credibility by asserting that they gave consistent testimony. Improper vouching occurs if the prosecutor (1) places the prestige of the government behind the witness or (2) indicates that evidence not presented at trial supports the witness's testimony. *State v. Robinson*, 189 Wn. App. 877, 892-93, 359 P.3d 874 (2015). However, there is a difference between the prosecutor's personal opinion, as an independent fact, and an opinion based upon or deduced from the evidence. *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006). Misconduct occurs only when it is clear and unmistakable that the prosecutor is not arguing an inference from the evidence, but is expressing a personal opinion. *Id.* at 54.

Here, the prosecutor did not make a personal comment on Finch's and Barclift's credibility or indicate that other information not presented to the jury supported their credibility. The prosecutor indicated that he would refer to Finch's and Barclift's testimony as one version of events that he would compare against Asbach's version. He did not say or imply that he personally believed Finch and Barclift or that they must be telling the truth because their stories were consistent. The prosecutor also did not argue that Finch and Barclift should be believed based on information not presented to the jury. His argument was limited to the evidence presented at trial.

The prosecutor simply underscored how different Asbach's account of events was when compared to Finch's and Barclift's account and left it to the jury to decide which story to believe. Accordingly, the prosecutor did not improperly vouch for Finch and Barclift.

2.    Bolstering

Asbach argues that the prosecutor's comment improperly bolstered the credibility of Finch and Barclift.  Generally a prosecutor may not bolster a police witness's character.  *State v. Jones*, 144 Wn. App. 284, 292-93, 183 P.3d 307 (2008) (finding prosecutor improperly bolstered officer's character with facts not in evidence regarding officer's usage of informants).  For example, improper bolstering occurs when a prosecutor attempts to show an officer's good character through references to the officer's awards and commendations.  *State v. Smith*, 67 Wn. App. 838, 844-45, 841 P.2d 76 (1992).

Here, the prosecutor did not seek to elevate Finch's and Barclift's character.  Asbach seems to argue that the prosecutor bolstered the police witnesses' good character by simply pointing out that their testimony was similar.  However, the similarity between Finch's and Barclift's testimony does not suggest good character.  Accordingly, the prosecutor did not engage in improper bolstering.

3.    Comment on Truthfulness

Asbach argues that the prosecutor's representation that Barclift's and Finch's testimony supported each other had the same effect as if the prosecutor had impermissibly asked each witness if the other was telling the truth.  It is improper to ask one witness to comment on the truthfulness of another witness.  *State v. Ramos*, 164 Wn. App. 327, 334, 263 P.3d 1268 (2011).  And testimony from a law enforcement officer regarding the veracity of another witness may be especially prejudicial because an officer's testimony carries a special aura of reliability with the jury.  *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

Here, the prosecutor never asked Finch or Barclift to comment on the veracity of any witness, and neither Finch nor Barclift expressed an opinion on the veracity of any witness.

First, the prosecutor's comment did not express any belief regarding veracity, but rather sought to express that the officers' testimony amounted to one story. Second, the comment at issue was made by the prosecutor, rather than either of the officers, and therefore the comment did not carry a special aura of reliability. Third, the jurors were instructed that they were the sole judges of witness credibility and of the value and weight of the testimony.

The prosecutor's comment did not constitute vouching, bolstering, or an improper comment on truthfulness. Accordingly, we hold that the prosecutor's comment was not improper.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Asbach argues that his defense counsel was ineffective for failing to object to the prosecutor's comment about the consistency between Finch's and Barclift's testimony. We disagree.

This court reviews claims of ineffective assistance of counsel de novo. *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). This court presumes that counsel's assistance was effective, until the defendant shows in the record the absence of legitimate or tactical reasons supporting counsel's conduct. *Id.* at 33-34.

Asbach's ineffective assistance claim fails because he cannot show that defense counsel's performance was deficient. As discussed above, the prosecutor's comment was not improper. Therefore, there was no basis on which defense counsel could have successfully objected.

Because there was no basis for a sustainable objection, defense counsel was objectively reasonable in deciding not to object.

Accordingly, we hold that defense counsel was not ineffective for failing to object to the prosecutor's comment during closing argument.

C.      SAG CLAIMS

1.      Sufficiency of the Evidence

Asbach argues that the State failed to present sufficient evidence to show that (1) he entered or remained unlawfully in the garage and (2) he had the intent to commit a crime. We disagree.

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). This court will assume the truth of the State's evidence and all reasonable inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106. This court will also defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Id.*

The primary elements of second degree burglary are: (1) entering or remaining unlawfully in a building other than a vehicle or dwelling (2) with the intent to commit a crime against a person or property therein. RCW 9A.52.030(1).

Regarding the first element, Finch testified that he saw Asbach come out of the side garage door. A rational trier of fact would reasonably infer that if Finch saw Asbach exit the garage, Asbach must have entered the garage earlier. Further, the property owner and Asbach both testified that Asbach did not have permission to be on the property, making Asbach's

presence unlawful. Although Asbach testified that he was walking around the garage and never entered the garage, we defer to the trier of fact's resolution of conflicting testimony.

Regarding the second element, Finch testified that Asbach said that he took a glucose meter from the garage and also said that he was looking for vinyl records but did not find any worth taking. Barclift testified that Asbach told him he left the glucose meter in the garage and that he did not find the record that he was looking for. From those statements, a rational trier of fact could conclude that Asbach had the intent to steal property when he entered the garage.

Accordingly, we hold that the State presented sufficient evidence of second degree burglary.

2. Ineffective Assistance of Counsel at Sentencing

Asbach argues that his counsel was ineffective for failing to object to the State's recommendation that the trial court impose a sentence on the high end of the standard range. He argues that the State supported its recommendation with factors that would only be appropriate to consider if seeking a sentence outside of the standard range. We disagree.

As discussed above, to prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33.

Here, the standard sentencing range was 51-68 months. The State argued for a sentence of 68 months based on the fact that Asbach's offender score was two points higher than the range's minimum qualifying score of nine and that Asbach had failed to appear at his initial sentencing. Asbach asserts that his counsel should have objected because the trial court should not have considered his higher offender score unless it sought to impose an exceptional sentence and should not have considered his failure to appear because it did not relate to the underlying

crime. But Asbach provides no authority to support his claim that the trial court should not have considered those factors.

In fact, RCW 9.94A.530(1) describes the standard sentence range calculation process and provides that "[t]he court may impose any sentence within the range that it deems appropriate." There are no specific factors for the trial court to consider when imposing a standard range sentence. Therefore, defense counsel would not have had grounds to object to the State's argument.

Further, defense counsel presented his own argument for a 51-53 month sentence that provided a number of mitigating factors for the trial court to consider. Defense counsel argued that Asbach's burglary conviction should be discounted because he did not actually commit a crime within the garage. Defense counsel also argued that Asbach left messages indicating that he tried to make his initial sentencing but had to walk to the courthouse on foot, and he did not appear in the following days because he was out of town visiting a friend who was shot in a hunting accident. Finally, defense counsel added that Asbach had ADHD and other mental health issues as a child that could have helped explain his markedly different memory of events at trial.

Because the trial court had the authority to consider the factors presented by the State and because defense counsel rebutted the State's grounds and presented additional grounds in support of a lower sentence, we hold that Asbach did not receive ineffective assistance of counsel during sentencing.

### 3. Imposition of LFOs

Asbach argues that the trial court erred in imposing LFOs without considering his present or future ability to pay. We disagree.

Asbach's judgment and sentence imposes LFOs for victim assessment ($500), criminal filing fee ($200), and DNA collection fee ($100). Each of those costs are statutorily mandated. RCW 7.68.035(1)(a) imposes the victim assessment, RCW 36.18.020(2)(h) imposes the criminal filing fee, and RCW 43.43.7541 requires the DNA collection fee. This means the trial court had no discretion when imposing the obligations. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 775 (2013). The requirement that the trial court consider the defendant's ability to pay applies only to *discretionary* LFOs. *See id.* at 103.

Accordingly, the trial court did not err in failing to consider Asbach's ability to pay the mandatory LFOs.

We affirm Asbach's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

MELNICK, J.

SUTTON, J.

10