

2016 DEC 27 ... 10:5

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, ) | DIVISION ONE |
| ) | |
| Respondent, ) | No. 74056-3-I |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| JORGE JAVIER ZAYAS-LOPEZ, ) | |
| ) | |
| Appellant. ) | FILED: December 27, 2016 |
| _____ ) | |

DWYER, J. — Jorge Zayas-Lopez appeals from the judgment entered on a jury's verdicts finding him guilty of three counts of rape of a child in the first degree, one count of child molestation in the first degree, and one count of communication with a minor for immoral purposes. He contends that the trial court abused its discretion by allowing the State to present evidence of hand and head gestures made by A.R.B., the child victim, that tended to show her precocious knowledge of explicit sexual matters; by denying his motion for a mistrial in response to testimony by an advanced registered nurse practitioner who, he claims, improperly vouched for A.R.B.'s credibility; and by rejecting his request for a lower offender score because, he asserts, two of the rape of a child in the first degree convictions were based upon the "same criminal conduct." Concluding that the trial court properly exercised its discretion as to all three rulings, we affirm.

I

Jorge Zayas-Lopez was introduced to A.R.B. during his romantic relationship with her mother, Armida Castro, which began in 2011. Castro became pregnant with Zayas-Lopez's child. Zayas-Lopez and Castro became engaged in early 2012. In addition to A.R.B., Castro had two younger daughters from a prior relationship. After the engagement, Zayas-Lopez, Castro, and her daughters moved together into a large three-bedroom apartment. At the time, A.R.B. was eleven years old. Her younger sisters were nine and five years old.

By the fall of 2013, Castro's relationship with Zayas-Lopez had deteriorated. On one day in particular, Zayas-Lopez took Castro's car without her permission and did not reply to calls or text messages to his cell phone or return to the apartment. Zayas-Lopez did not return the next day and, that evening, A.R.B., who was then 12 years old, asked her mother if she could speak to her in private. During this conversation, A.R.B. told her mother that, while living in their apartment, Zayas-Lopez had repeatedly raped and molested her. Castro called the police.

Officer Melvin Partido was dispatched to meet with Castro and A.R.B. Partido asked A.R.B. what had happened. In the course of responding, A.R.B. made an up-and-down gesture with her hand, mimicking the motion made by a hand stroking a penis. She also pointed to her vaginal and buttocks areas.

The following day, Castro took A.R.B. to an appointment with a pediatrician. The pediatrician conducted an external physical examination of A.R.B. but did not note any injury to her genitalia.

A few days later, Carolyn Webster, a forensic child interview specialist, conducted a video-recorded interview of A.R.B. Webster asked A.R.B. what brought her in for the appointment that day and A.R.B. responded in part by gesturing with her hand in the same way as she had gestured when talking with Officer Partido and by moving her head forward and backward, mimicking fellatio.

Nearly a week later, Joanne Mettler, an advanced registered nurse practitioner, interviewed and conducted a head-to-toe physical examination of A.R.B. The results of Mettler's examination were inconclusive, determining that A.R.B. was not then suffering from physical injuries arising from sexual abuse, but not ruling out the possibility that any prior injury had healed or that A.R.B. had been abused without any physical injury arising therefrom.

Zayas-Lopez was subsequently charged with three counts of rape of a child in the first degree, one count of child molestation in the first degree, and one count of communication with a minor for immoral purposes.

Prior to trial, Zayas-Lopez sought to exclude evidence of A.R.B.'s hand and head gestures—testimony by Partido and Webster about A.R.B.'s gestures and a video recording showing A.R.B. making the gestures during her interview with Webster—claiming that the evidence constituted inadmissible hearsay. The trial court denied the motion, ruling that evidence of the gestures was admissible to show A.R.B.'s precocious knowledge of explicit sexual matters and thus not hearsay. The trial court further ruled that, with regard to the gestures, the State was limited to presenting evidence only of the gestures themselves. In addition,

the trial court offered to give an instruction at trial limiting the jury's use of the evidence of the gestures but Zayas-Lopez's counsel declined the offer.

At trial, the State called one of A.R.B.'s sisters, Mettler, Partido, Webster, Castro, and A.R.B to testify. Mettler testified to her background as an advanced registered nurse practitioner specializing in conducting physical examinations of children who may have been sexually abused. She further testified that her examination appointments consist of a conversation with the parent, a conversation with the child, and then a physical examination of the child.

Later in her testimony, because she did not specifically recall A.R.B., Mettler read from a report that she authored in 2013 shortly after her appointment with A.R.B., memorializing her preexamination conversation with A.R.B. and her physical examination of A.R.B. Mettler further testified that she concluded that the results of her examination were inconclusive and that A.R.B. did not present then-existing symptoms of physical injuries consistent with sexual abuse.

On cross-examination, defense counsel repeatedly highlighted Mettler's conclusion that the results of her examination of A.R.B. were inconclusive, pressing Mettler on the possibility that the results could be interpreted to mean that any injuries arising from sexual abuse had healed, that the alleged abuse did not cause injury to A.R.B., or even that the alleged abuse never occurred. At the end of her cross-examination, Zayas-Lopez's counsel obtained Mettler's agreement that she had written in her examination report that "a possibility is that no sexual abuse happened."

After a four-day recess that included the Memorial Day holiday, Zayas-Lopez moved for a mistrial, claiming that certain statements that Mettler read from her report regarding her preexamination conversation with A.R.B. improperly vouched for A.R.B.'s credibility and opined on Zayas-Lopez's guilt. Zayas-Lopez pointed to Mettler's statements in which she read that A.R.B. asked her if "this has happened to other kids," that she responded, "I told her . . . about how I see kids every day and this has happened to other kids" and that she said to A.R.B., "it was very brave that she told about it."[1] The trial court denied Zayas-Lopez's motion, concluding that "[t]here was no indication from this witness that she was making any valuation about whether this child was credible or not."

The trial continued. On the day that Webster was to testify, a colloquy took place regarding the video recording to be played of A.R.B. making the hand and head gestures during her interview with Webster. The trial court again offered to give a limiting instruction regarding this evidence. Defense counsel again declined the offer.

The jury convicted Zayas-Lopez on all counts.

At sentencing, Zayas-Lopez argued for a lower offender score calculation, claiming that only two of his three convictions of rape of a child in the first degree should count toward calculating his offender score because evidence presented of one incident involving two acts—penile-anal rape and penile-oral rape—constituted the "same criminal conduct." The State responded that it had elected

---

[1] Zayas-Lopez's counsel had contemporaneously objected to these statements on the grounds that the statements were not made for the purpose of medical diagnosis and that the State had not established the proper foundation for the "recorded recollection" exception to the hearsay bar. The trial court overruled the objections.

at trial which events corresponded to which charges and that it had presented sufficient evidence of separate and distinct acts of rape of A.R.B. to support each conviction. The State noted that it had specifically highlighted, in its closing argument, the incident involving the two acts cited by Zayas-Lopez, indicating that those acts supported conviction as to only one count of rape of a child in the first degree. The trial court rejected Zayas-Lopez's claim, adopted the offender score proposed by the State, and sentenced Zayas-Lopez to a standard range indeterminate sentence of 250 months to life in prison.

II

A

Zayas-Lopez first contends that the trial court erred by admitting testimony and video evidence concerning the sexual gestures made by A.R.B. He asserts that this evidence was hearsay or, alternatively, unfairly prejudicial. We disagree.

Evidence offered for the purpose of showing precocious knowledge of explicit sexual matters is reviewed for its relevance and potential for prejudice. The evidence regarding A.R.B.'s gestures was offered to show that A.R.B. possessed explicit sexual knowledge atypical for her age, maturity, and experience. The evidence was properly admitted for that purpose. No trial court error is established.

1

Zayas-Lopez first contends that the trial court erred by not excluding evidence of A.R.B.'s gestures as inadmissible hearsay. Because evidence of

A.R.B.'s gestures was offered to show her precocious knowledge of explicit sexual matters, rather than for the truth of any assertion that the gestures conveyed, Zayas-Lopez is wrong.

Evidence of precocious knowledge of explicit sexual matters is evidence indicating that a child has knowledge of explicit sexual matters at an earlier age than is typical for a child of that maturity and experience. See, e.g., State v. Swan, 114 Wn.2d 613, 633, 790 P.2d 610 (1990) (three-year-old children's description of fellatio, ejaculation, and intercourse); State v. Jones, 112 Wn.2d 488, 497, 772 P.2d 496 (1989) (four-year-old child's descriptions of urolagnia); In re Dependency of Penelope B., 104 Wn.2d 643, 654-55, 709 P.2d 1185 (1985) (five-year-old child's gestures with anatomically correct male doll indicating her familiarity with male genitalia and the act of fellatio); State v. Bishop, 63 Wn. App. 15, 28, 816 P.2d 738 (1991).

Evidence offered to show a child's precocious knowledge of explicit sexual matters is not hearsay.[2] Penelope B., 104 Wn.2d at 654-55. "[B]y definition, an utterance, writing or nonverbal conduct that is not assertive is not hearsay." Penelope B., 104 Wn.2d at 652. Evidence offered to show that a child has precocious knowledge of explicit sexual matters is not offered for the truth of any assertion that it conveys—that, for instance, a specific episode of sexual abuse actually occurred. Penelope B., 104 Wn.2d at 654-55.

---

[2] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." ER 801(a).

Rather, the evidence is offered as circumstantial evidence that the child possesses explicit sexual knowledge incongruent with his or her age, maturity, and experience. Consequently, evidence offered to show precocious knowledge of explicit sexual matters is reviewed for its relevance and potential for prejudice pursuant to ER 402 and ER 403. State v. Stevens, 58 Wn. App. 478, 490-91 n.5, 794 P.2d 38 (1990); accord Penelope B., 104 Wn.2d at 652-53. In a matter involving child sexual abuse, evidence of a child's precocious knowledge of explicit sexual matters tends to create an inference that the child had gained such knowledge through prior episodes of sexual abuse. Swan, 114 Wn.2d at 648-49 ("'A young child is unlikely to fabricate a graphic account of sexual activity because such activity is beyond the realm of [her] experience.'" (alteration in original) (internal quotation marks omitted) (quoting Comment, *The Sexually Abused Infant Hearsay Exception: A Constitutional Analysis*, 8 J. Juv. L. 59, 67 (1984))).

Prior to trial, Zayas-Lopez moved to exclude testimony about—and the video recording of— A.R.B.'s hand and head gestures. Zayas-Lopez contended that evidence concerning the gestures was offered as a nonverbal assertion and thus constituted inadmissible hearsay. The State responded that it was not offering evidence of the gestures for the truth of any assertions that the gestures conveyed. Rather, the State argued, evidence of the gestures was proffered to show A.R.B.'s circumstantial knowledge of explicit sexual matters that, due to her age, would ordinarily be beyond her ken.

The trial court denied Zayas-Lopez's motion, ruling that evidence of the gestures themselves was not hearsay because the gestures were offered "for the purpose of showing sexual knowledge beyond the normal understanding of a child of her age." However, the trial court limited evidence concerning the gestures to evidence of the gestures themselves, restricting the testimony of Webster and Partido regarding the gestures and excluding the audio portion of the video recording.

Evidence of A.R.B's gestures, as admitted, was not hearsay. The evidence was not offered for the truth of any assertion that the gestures conveyed. Rather, the evidence was properly admitted to show her precocious knowledge of explicit sexual matters, specifically her knowledge of both fellatio and a method of male masturbation and/or female-hand-to-male-genital eroticism that a child of A.R.B.'s age, maturity, and experience typically does not possess. The trial court did not err.

2

Zayas-Lopez next asserts that the trial court erred by not excluding evidence of A.R.B's gestures because the evidence was unfairly prejudicial to him. We disagree.

The trial court has broad discretion in balancing the probative value of evidence against its prejudicial impact. State v. Rivers, 129 Wn.2d 697, 710, 921 P.2d 495 (1996). We will not disturb an evidentiary ruling absent a manifest abuse of discretion. State v. Russell, 125 Wn.2d 24, 78, 882 P.2d 747 (1994).

Only relevant evidence is admissible at trial. ER 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevant evidence must be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice." ER 403.

Prior to trial, counsel for Zayas-Lopez argued that evidence of A.R.B.'s gestures was inadmissible hearsay. During a pretrial hearing, the State replied that it was offering evidence of—and eliciting testimony regarding—the gestures only to show that the gestures were made, for the purpose of showing A.R.B.'s precocious knowledge of explicit sexual matters. The trial court ruled that the evidence was admissible for that purpose.

> Let me say that, if, as I understand the State's -- what they're going to be doing is that they would be asking the forensic interviewer and Officer Parido --
>
> [PROSECUTOR]: Partido.
>
> THE COURT: -- Partido: During your conversations or during your interview of her, did she make any gestures? And Partido would have to describe them, because there is no video of that. The forensic investigator has a video. Yes, she made certain gestures. And the State would propose to show without sound those gestures. Is that what the State -- that's my understanding of what the State is proposing.
>
> [PROSECUTOR]: That's correct.
>
> THE COURT: And they would be offering for the purpose of showing sexual knowledge beyond the normal understanding of a child of her age. I believe that would be allowed and that the defense would be entitled to a limiting instruction if they requested that.
>
> I'm always open to -- if you come up with something, some briefing that addresses that issue. You can always give that to me and ask me to change my mind. But that's my ruling at this point. So -- unless you come up with -- unless you want to do further briefing and I change my mind, that's my ruling.

[DEFENSE COUNSEL]: Okay.

THE COURT: Okay?

So, any other motions in limine that we need to deal with other than jury-related?

[PROSECUTOR]: Not from the State, no.

[DEFENSE COUNSEL]: I believe that's it from the defense as well.

On the day that Webster was to testify, counsel for Zayas-Lopez objected to the admission of evidence of the video recording ostensibly on the ground that the evidence was unfairly prejudicial. Zayas-Lopez's counsel asserted that, because the evidence to be presented of the video recording constituted only a segment of A.R.B.'s 40 minute interview with Webster, the jury was likely to speculate as to the content of the rest of the video recording. Rather than proving that the gestures were made by showing the video recording, defense counsel argued, the State should be limited to presenting evidence of A.R.B.'s gestures through Webster's testimony.

The trial court reaffirmed its prior ruling and, later, offered to give a limiting instruction:

> I think the video can be shown. If you can -- the problem I've had with, as you know, with the showing the gestures is that I'm not quite sure how it is relevant. And how do you plan on bringing it in? Because I don't think that, if -- if she - if the child was saying, this is what I did, this is what I saw, then that is -- that is a statement, hearsay statement. This is what I did. Right? Is that what she's saying?
>
> [PROSECUTOR]: Yes. But I'm -- I plan to do just like I did with the officer, not asking Miss Webster to provide any context for the question being asked or the answer being given, only that, you know, you were the interviewer. In conducting your interview of [A.R.B.] at times did she use gestures? If I were to show you one, would you recognize it? Play. And not provide the context for what the discussion was or even who [A.R.B.]'s talking about. And the purpose of it isn't for the truth; it's to show that she's familiar with this adult male masturbatory gesture.

THE COURT:  So, if you can present it just that way, yes.

. . . .

THE COURT: And in this case would you want a limiting instruction?  It's a tough one.

[DEFENSE COUNSEL]:  We'll decline, depending on what I see here. I assume it's going to be the same video, just no audio.

THE COURT:  Anything else, now that you've seen it?

[DEFENSE COUNSEL]:  Just that you can see her mouthing words during it.  If somebody can lip read, they can tell what they're saying.  So, if there's a way to cut it off before she starts --

[PROSECUTOR]:  She's talking for the duration of it.  I mean, her mouth is constantly moving.

[DEFENSE COUNSEL]:  Do you mind if I see it one more time?

THE COURT:  I can ask the -- we can ask the jury if anyone can lip read.

[DEFENSE COUNSEL]:  Hold on.  Yeah. I don't know that -- I mean, it's the last portion where I think you can see what she's saying.

THE COURT:  I can ask the jury if anyone can lip read.  I will tell you that I can and from this distance I could not read her lips.

[DEFENSE COUNSEL]:  Okay.  I would -- I don't want to highlight that issue.

On appeal, Zayas-Lopez asserts that evidence of A.R.B.'s gestures should have been excluded as unfairly prejudicial because A.R.B. made the gestures while being questioned about his alleged acts of rape and molestation against her and thus could not be separated from the investigative context in which they were made.

There was no error. The evidence of A.R.B.'s hand and head gestures was highly probative because it tended to prove that A.R.B. had been exposed to such matters in the past.  The related inference was that she gained such familiarity as a result of being molested and raped.  Stevens, 58 Wn. App. at 491.

While the investigatory context in which the gestures were made would have been apparent to the jury, there was no danger of *unfair* prejudice to Zayas-

Lopez. ER 403. The trial court limited evidence of the gestures to the gestures themselves, excluding the audio portion of the video recording and limiting testimony pertaining to the gestures to only statements concerning the gestures themselves. Moreover, the trial court twice offered to give an instruction limiting the jury's use of the evidence, but Zayas-Lopez's counsel declined both offers. Thus, in this way, the trial court did not abuse its discretion.

Accordingly, for the foregoing reasons, the trial court did not err by admitting evidence of A.R.B's gestures to demonstrate her precocious knowledge of explicit sexual matters.

B

Zayas-Lopez next asserts that the trial court erred by denying his motion for a mistrial arising from nurse practitioner Mettler's testimony. He claims that her testimony included statements that improperly vouched for A.R.B.'s credibility. To the contrary, by the time that Zayas-Lopez moved for a mistrial four days after Mettler's testimony ended, it was clear (and repeatedly emphasized by defense counsel during Mettler's cross-examination) that her actual opinion was derived from her conclusion that her physical examination of A.R.B. was inconclusive.

"A trial court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion." State v. Williams, 159 Wn. App. 298, 321, 244 P.3d 1018 (2011) (citing State v. Allen, 159 Wn.2d 1, 10, 147 P.3d 581 (2006)). We review a motion for a mistrial as of the time that the motion was made. State v. Russell, 62 Wn.2d 635, 639, 384 P.2d 334 (1963).

The trial court "should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Lewis, 130 Wn.2d 700, 707, 927 P.2d 235 (1996) (citing State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994)). "A mistrial should be granted only when 'nothing the trial court could have said or done would have remedied the harm done to the defendant.'" State v. Gilcrist, 91 Wn.2d 603, 612, 590 P.2d 809 (1979) (quoting State v. Swenson, 62 Wn.2d 259, 280, 382 P.2d 614 (1963)).

A witness's expression of personal belief about the veracity of another witness is inappropriate opinion testimony. State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

Mettler's testimony involved four topics: (1) her background as an advanced registered nurse practitioner specializing in conducting head-to-toe physical examinations of children who may have been sexually abused; (2) her procedure for interviewing a child before beginning the physical examination in order to establish the child's medical history and the procedure for the examination; (3) her report of her conversation with A.R.B. prior to the examination; and (4) her conclusion that the results of A.R.B.'s examination were inconclusive.

At trial, because Mettler did not specifically recall meeting A.R.B. (due to the large volume of children with whom she worked), she was provided with the report that she authored soon after her appointment with A.R.B. in 2013. Mettler then testified to her conversation with A.R.B. as she had recorded it in that

report, discussing her questions regarding—and A.R.B.'s descriptions of—the touching that happened to her. In this manner, Mettler testified that,

> I then told her that I did not have any other questions. Did she have any questions?
> And she said, no. And then she said that she really did not want to talk about it too much, because she starts crying and it is painful.
> I said, that is fine, I did not want her to cry, that she did a really good job talking to me. I asked her if she had any other questions.
> And then she asked me if this has happened to other kids. I told her and talked with her a little bit about how I see kids every day and this has happened to other kids --

Zayas-Lopez objected at this point, asserting that Mettler's statements were not made for the purpose of medical diagnosis and that the State had not laid the foundation to qualify the report pursuant to the "recorded recollection" exception to the hearsay rule. The trial court overruled the objection.

When Mettler's testimony resumed, she continued reading from her report, stating,

> I told her and talked with her a little bit about how I see kids every day and that this has happened to other kids and that it was very brave that she told about it.
> And she told me about how he told her to keep it a secret but now her and her mom have talked about how they cannot keep secrets and cannot keep any sexual secrets.
> And then we proceeded to the physical exam.

Mettler then read from her report regarding her examination of A.R.B. and the results that she had found. She read that she had examined A.R.B. for symptoms of physical injury arising from sexual abuse. However, based on the results of the examination, Mettler concluded that she was unable to reach any conclusion as to whether sexual abuse had occurred.

Immediately thereafter, on cross-examination, Zayas-Lopez's counsel

highlighted Mettler's conclusion that the results of her physical examination of

A.R.B. were inconclusive.

> [DEFENSE COUNSEL]. You wrote in your report that your physical examination of [A.R.B.] cannot prove or disprove whether or not sexual abuse occurred. Correct?
> [METTLER]. That is correct.
> [DEFENSE COUNSEL]. According to your report there are three possible explanations.
> [METTLER]. That's correct.
> [DEFENSE COUNSEL]. One explanation is that there was sexual abuse and that the trauma healed.
> [METTLER]. That's correct.
> [DEFENSE COUNSEL]. Now, you've already testified that you didn't see any scarring anywhere. Correct?
> [METTLER]. That's correct.
> [DEFENSE COUNSEL]. And you didn't see any scar tissue.
> [METTLER]. That's correct.
> [DEFENSE COUNSEL]. And you didn't see anything else suggesting that there was prior injuries to any part of her genital area.
> [METTLER]. That's correct.
> [DEFENSE COUNSEL]. And, when you were looking at her genital area, you were specifically looking for signs of healing or prior trauma. Correct?
> [METTLER]. That's correct.
> [DEFENSE COUNSEL]. The second possibility is that there was -- that there were multiple acts of penetration in the vaginal area and the anus and yet no injury arose from it; so, basically there was sexual abuse and no evidence of an injury.
> [METTLER]. Correct.
> [DEFENSE COUNSEL]. And, of course, when you were making that statement you weren't taking into consideration the size of the penis or vagina in this case.
> [METTLER]. That's correct.
> [DEFENSE COUNSEL]. And third -- the third possible conclusion, of course, is that, based on the examination that you did and the examination that was done on October 21st, that one could conclude that there simply wasn't any sexual abuse.
> [METTLER]. That's possible, yes.
> [DEFENSE COUNSEL]. In fact, based on your examination and based on the lack of any medical evidence, it would be

reasonable -- a reasonable person could conclude that there was no sexual abuse.

    [METTLER]. No. I wouldn't agree with that.

    [DEFENSE COUNSEL]. So, you're saying that a person -- so, based on the lack of medical evidence, a person could conclude that there was no sexual abuse.

    [METTLER]. So, there can be no medical evidence and no sexual abuse happen, if that's what you're saying.

    [DEFENSE COUNSEL]. And I'm not trying to put words in your mouth. I guess I would just direct you to your report. In your report didn't you write that a possibility is that no sexual abuse happened?

    [METTLER]. That's correct.

After a four-day recess, trial recommenced and Zayas-Lopez moved for a mistrial, claiming that, by stating that A.R.B. "was very brave" and that she had seen sexual abuse "happen[ ] to other children," Mettler had improperly vouched for A.R.B.'s credibility. The trial court denied the motion, noting that Zayas-Lopez had not objected on the basis of improper vouching at the time that Mettler's testimony was given[3] and stating that

> I don't think that . . . when she told the child you're brave, this happened to other people is vouching for the child. There was no indication from this witness that she was making any valuation about whether this child was credible or not. . . . It's just something you say so that a child will talk, not that she was vouching. So, I don't think that was vouching at all.

---

[3] Zayas-Lopez asserts that his counsel did not interpose further objections to Mettler's testimony because his counsel's initial objections were overruled. To object again, Zayas-Lopez claims, would have been a "useless endeavor." We disagree.

The grounds on which Zayas-Lopez's counsel first interposed an objection to Mettler's testimony—that the State did not satisfy the exceptions to the hearsay rule for either statements made for the purpose of medical diagnosis or for "recorded recollections"—are wholly separate grounds to that on which Zayas-Lopez now claims he would have objected—that Mettler's statements constituted improper opinion testimony. "When, as here, an objection does not call the trial court's attention to the real reason for the testimony's inadmissibility, 'error may not be based upon the overruling of the objection.'" State v. Smith, 67 Wn. App. 838, 846, 841 P.2d 76 (1992) (quoting State v. Boast, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976)). The trial court is entitled to a contemporaneous objection on the proper basis in order to have, if the objection is sustained, the array of possibilities for a remedy and the ability to exercise its discretion as to which remedy may best cure the error. Kirkman, 159 Wn.2d at 935. Zayas-Lopez never presented the trial court with the opportunity to correct any claimed error through a timely and proper objection.

No trial irregularity arose from Mettler's testimony. At best, the challenged statements were ambiguous. Mettler testified that she was an advanced registered nurse practitioner who specialized in conducting physical examinations of children for signs of sexual abuse. At the time that she made the statements, Mettler had yet to examine A.R.B. and thus had no physical evidence upon which to determine whether A.R.B. had been sexually abused. Furthermore, the statements were consistent with Mettler's earlier testimony that, when speaking with a child before conducting a physical examination, she uses certain interview techniques in order to induce the child to talk about the alleged abuse.

Moreover, Mettler's actual opinion, as testified to, was derived from the conclusion she reached after examining A.R.B. for signs of physical injury arising from sexual abuse. Indeed, Mettler's ultimate conclusion, made clear by her testimony on direct and cross-examination and based upon her expertise as an advanced registered nurse practitioner, was that the results of her examination of A.R.B. were inconclusive—that A.R.B. at that time presented with no symptoms of physical injury associated with sexual abuse and that there was a possibility that no sexual abuse had occurred. These statements neither supported nor undercut A.R.B.'s credibility.[4] See, e.g., Kirkman, 159 Wn.2d at 929-30 ("Dr.

---

[4] Zayas-Lopez relies on two cases in an attempt to establish that Mettler improperly vouched for A.R.B., State v. Alexander, 64 Wn. App. 147, 822 P.2d 1250 (1992), and State v. Carlson, 80 Wn. App. 116, 906 P.2d 999 (1995). In those cases, the witnesses at issue were asked about and explicitly testified to their belief in a child witness's credibility. Alexander, 64 Wn. App. at 154; Carlson, 80 Wn. App. at 119-21. Here, Mettler was asked neither for her opinion regarding A.R.B.'s credibility nor as to whether the rapes and molestation actually occurred. Thus, Alexander and Carlson are inapposite.

Stirling was not 'clearly' commenting on A.D.'s credibility and actually testified that his findings neither corroborated nor undercut A.D.'s account. . . . Dr. Stirling's statement that A.D.'s account was 'clear and consistent' does not constitute an opinion on her credibility.").

Consequently, at the time Zayas-Lopez moved for a mistrial (four days after Mettler testified), it was clear that Mettler's ultimate opinion was that it was uncertain whether sexual abuse had occurred. This was not an opinion that vouched for A.R.B.'s credibility. No trial irregularity occurred.[5] Accordingly, the trial court did not err by denying Zayas-Lopez's request for a mistrial.

C

Zayas-Lopez also asserts that the sentencing court abused its discretion by scoring two of his rape convictions as separate convictions for the purpose of calculating his offender score because, he claims, two of the acts of rape that formed the basis of his convictions constituted the "same criminal conduct." Because ample evidence in the record supports the sentencing court's determination, there was no abuse of discretion.

A sentencing court's determination regarding "same criminal conduct will not be disturbed unless the sentencing court abuses its discretion or misapplies the law." State v. Aldana Graciano, 176 Wn.2d 531, 536, 295 P.3d 219 (2013). A sentencing court abuses its discretion "when the record supports only one

---

[5] Zayas-Lopez also asserts that Mettler's statements during her conversation with A.R.B. constituted an improper opinion on Zayas-Lopez's guilt. We disagree. By the time that Zayas-Lopez moved for a mistrial (four days after Mettler's testimony ended), it was clear that Mettler's expert opinion was not that Zayas-Lopez was guilty but, rather, that she was unable to reach a conclusion as to whether A.R.B. had been sexually abused. Indeed, prior to the mistrial motion, Mettler had testified that it was possible that "no sexual abuse happened."

conclusion on whether crimes constitute the 'same criminal conduct.'" Aldana Graciano, 176 Wn.2d at 537-38. "But where the record adequately supports either conclusion, the matter lies in the court's discretion." Aldana Graciano, 176 Wn.2d at 538. The burden is on the defendant to establish that the crimes underlying the convictions constitute the same criminal conduct. Aldana Graciano, 176 Wn.2d at 539.

Our Supreme Court explained the interplay between determinations of "same criminal conduct" for current offenses and the offender score:

> A determination of "same criminal conduct" at sentencing affects the standard range sentence by altering the offender score, which is calculated by adding a specified number of points for each prior offense. RCW 9.94A.525. For purposes of this calculation, current offenses are treated as prior convictions. RCW 9.94A.589(1)(a). However, "if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime." [RCW 9.94A.589(1)(a)].
> Crimes constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." [RCW 9.94A.589(1)(a)].

Aldana Graciano, 176 Wn.2d at 535-36.

At trial, A.R.B. testified to numerous instances in which Zayas-Lopez had raped and molested her while he was living in the apartment with A.R.B., her mother, and her sisters. Although A.R.B. was unable to recall specific dates on which the rapes and molestation occurred, she testified to several of Zayas-Lopez's acts of vaginal, oral, and anal rape occurring in the apartment's bathroom, bedroom, and living room. She further testified that the rapes and molestation occurred at times when her mother and sisters were not at home, in a different room of the apartment, or asleep. A.R.B. also testified to specific

instances of rape and molestation by Zayas-Lopez that stood out in her memory, including when he was smoking a pipe while penetrating her mouth with his penis, when he committed penile-oral rape upon her while she was on the living room couch (waking up her one-year-old sister who then attempted to touch his penis), and when he raped her in her mother's bedroom (after locking the door behind him) by sequentially penetrating her anus and her mouth with his penis.

In closing argument, the State discussed the acts of rape that were presented and how evidence of those acts would suffice to establish separate and distinct acts for the charged counts II through IV (rape of a child in the first degree):

> Now, the law is going -- the law requires you and it's in your instructions that you have to -- if you're going to convict him of any of the counts of rape, that you must agree unanimously as to separate and distinct acts, all twelve of you.
> So, for example, the State would argue to you *that a separate and distinct act of rape was* what [A.R.B.] described on her mother's bed when she said that he put his penis into her butt hole where the poop comes out and that it hurt, that he told her to bend over on her knees on the bed, that she told him that it hurt, that he wouldn't stop, and that it continued to hurt and that it hurt later on and that she then performed oral sex on him when he told her to turn and to face him.
> *That is a separate and distinct act.* And that's important because in cases like this, when kids are abused over and over and over again –
> [DEFENSE COUNSEL]: Objection, Your Honor.
> [COURT]: Sustained. Rephrase, please.
> [PROSECUTOR]: For [A.R.B.] these things happened to her repeatedly in different rooms on different occasions and, as I said, they became interwoven into the fabric of her life. So, she can't articulate every time he made her suck on his penis or that he raped her.
> [DEFENSE COUNSEL]: Objection, Your Honor.
> [COURT]: Overruled. You can go ahead.
> [PROSECUTOR]: But she was able to articulate some that stood out in her mind, for example, the anal rape that I just

described. It stood out in her mind because it hurt, and that's what prompted her to remember when I asked her: Did he ever do anything to you that hurt?

*So, you could consider that act as count two.* But you have to unanimously agree that it occurred.

*Count three* could be the vaginal intercourse that she described on her mother's bed. She told you that her pants were off, her underwear off, her legs were spread, and she was on her back, and then she remembered turning over onto her knees.

*Count four,* there was a moment in this trial when I asked [A.R.B.] about drug use. I asked: Did you ever see him using drugs?

And she said, yes, that it was in the bathroom, and that she looked up and she saw smoke coming out of his mouth.

And I asked her: Why did you look up?

And she said, because I was on my knees. And I was sucking -- his thing was in my mouth, I believe were her words.

*That is a separate and distinct act* that she was able to describe with such detail, how she saw the smoke going up, her vantage point. That could be the basis for one of these specific counts of rape.

[A.R.B.] described other counts, other acts that you could rely on. For example, the time in her mother's bathroom when he used his cell phone to show her videos of oral sex to ask her if she could do it that way. She told you that he wanted her to move her head around as she was going in and out of his penis and that he showed her videos of how he wanted her to do it. And she told you that she did perform oral sex on that occasion in that room. That could also be the basis for one of these separate and distinct acts of rape.

And your notes and your recollection of the testimony will likely reveal that there are more.

(Emphasis added.)

At sentencing, Zayas-Lopez argued for a lower offender score, asserting that the jury may have separately convicted him of two acts of rape that constituted the same criminal conduct. This was so, Zayas-Lopez claimed, because the jury may have based two convictions upon one episode of rape during which (in her mother's bedroom) Zayas-Lopez committed both penile-anal rape and penile-oral rape upon A.R.B. The State replied that it had taken

precautions in its closing argument by electing to treat evidence of the anal and oral rape in the bedroom as supporting a conviction on only a single count of rape of a child in the first degree. Upon review of the parties' briefs and the transcript of the closing argument, the sentencing court concluded:

> [T]hese are separate and distinct acts. The State actually was very clear in their argument that the one act that defense says is the same criminal conduct, the State argued probably was the same criminal conduct. And I read the testimony of the witness, and there's a description of many different acts in different rooms on different days. And the jury was instructed that they had to be unanimous in finding that an act occurred.

The sentencing court denied Zayas-Lopez's request for a lower offender score.

The sentencing court's reasoning was tenable. The evidence in the record supports the jury's determination that Zayas-Lopez committed three acts of rape of a child in the first degree upon A.R.B. while he was living with her. Indeed, in its closing argument, the State delineated several separate and distinct acts in the record that the jury could rely upon to convict Zayas-Lopez of three counts of rape of a child in the first degree and informed the jurors that they should treat the incident involving penile-anal rape followed by penile-oral rape as proving a single count of rape of a child in the first degree.

Zayas-Lopez failed to meet his burden of proof on this issue. Aldana Graciano, 176 Wn.2d at 539. There was no error.[6][7]

---

[6] Zayas-Lopez relies on State v. Tili, 139 Wn.2d 107, 985 P.2d 365 (1999), in claimed support of his argument that the acts of penile-oral rape and penile-anal rape of A.R.B. by Zayas-Lopez (occurring in the bedroom of A.R.B.'s mother) were the "same criminal conduct." Because these two acts were argued to the jury as supporting only one conviction, Tili is inapposite.

[7] To the extent that Zayas-Lopez relies on the double jeopardy clause for relief from his sentence, he is wrong.

> A double jeopardy violation claim is distinct from a "same criminal conduct" claim and requires a separate analysis. The double jeopardy violation focuses on the allowable unit of prosecution and involves the charging and trial

D

Zayas-Lopez requests that no costs associated with his appeal be assessed against him because he was found indigent by the trial court and because no order indicates that his financial situation has improved or is likely to improve.

Unless good cause shows otherwise, the trial court is entrusted with the determination of indigency. State v. Sinclair, 192 Wn. App. 380, 393, 367 P.3d 612, review denied, 185 Wn.2d 1034 (2016). When a trial court finds that a defendant is indigent, a presumption of continued indigency continues throughout appellate review. Sinclair, 192 Wn. App. at 393 (citing RAP 15.2(f)). If the State prevails on appeal, we may exercise our discretion and not impose appellate costs against the defendant. Sinclair, 192 Wn. App. at 388-90.

The trial court found that Zayas-Lopez was indigent. No trial court order finding that Zayas-Lopez's financial condition has improved or is likely to improve is before us. He is serving a 250 month prison sentence. Accordingly, "we now choose to exercise our discretion and direct the clerk of the court not to award appellate costs even though the State has substantially prevailed." In re Pers. Restraint of Flippo, No. 92616-6 (Wash. Dec. 8, 2016), at 8, http://www.courts. wa.gov/opinions/pdf/926166.pdf.

---

stages. The "same criminal conduct" claim involves the sentencing phase and focuses instead on the defendant's criminal intent, whether the crimes were committed at the same time and at the same place, and whether they involved the same victim.

State v. French, 157 Wn.2d 593, 611-12, 141 P.3d 54 (2006).

An assignment of error as to the sentencing phase of a criminal matter is properly analyzed pursuant to the "same criminal conduct" analysis, not the double jeopardy clause.

- 24 -

Affirmed.

We concur:

_____
Dwyer, J.

_____
Schindler, J.

_____
Becker, J.